## O'GRADY *v.* BARNHISEL.

23  287
119  684

A DEED executed by a collector of taxes for property sold for non-payment of taxes, which recites generally that the property was duly assessed, and that the taxes were levied upon it according to law, is *prima facie* evidence of title in the grantee, and is entitled to be received in evidence as such without any further proofs.

It is not necessary that a deed for taxes recite each act of the officers in making the assessment and levying the tax, etc., but a general recitation of the conclusions resulting from those acts is sufficient.

Such a deed is *prima facie* evidence that all the proceedings in relation to the tax were regular and in accordance with law, and the burden of showing that any irregularity occurred, is thrown upon the one asserting its invalidity.

An assessment of land to "A B, and all claimants, known and unknown," is valid and effectual as against the property, even if A B was neither the owner of, nor in possession of the property at the time of the assessment.

The tax law creates two remedies, one against the person and the other against the property, each having a distinct and separate existence; and a mistake in the name of the person to whom the property should have been assessed, does not affect the validity of the tax as against the property itself.

The expense of filing a certificate of sale in the Recorder's office, is not a proper item of costs to be charged by the collector at the sale.

A slight mistake made by the collector in computing the amount of taxes and costs, by which the property was sold for a small sum more than the amount actually due, does not invalidate the sale, particularly when it is not made to appear that the owner of the land suffered any injury by the mistake.

APPEAL from the District Court, Seventh Judicial District, Contra Costa County.

The facts are stated in the opinion of the Court.

*John Currey*, for Appellant.

If the real estate to be assessed or listed has an owner, who is known to the Assessor (and who may in most cases be known to him, if he seeks by diligent inquiry and examination to ascertain his name), it should be assessed to him.   Or if the owner be unknown to the Assessor, but the property is in the possession, charge, or control of a person, firm, or corporation, it should be so listed.   If the owner be unknown to the Assessor, and the land is unoccupied, then, and not until then, can the Assessor lawfully assess or list the same as the property of an unknown owner.

The premises demanded in this case were listed and assessed,

as appears by said certificate to "Joaquin Castro and wife, and all claimants and owners, known or unknown." Who, from this designation, could determine to whom the land was assessed? Was it assessed to Castro and wife, or to the claimants and owners known, or to the claimants and owners unknown? To which of the three classes of persons, and who were "all claimants and owners known?"

Again: Another objection to the certificate and tax deed, rendering the same radically insufficient as *prima facie* evidence of title to the premises in the purchaser at the tax sale, consists in the fact that the matters which the statute requires should be stated in the certificate (Sec. 18), and again stated in the deed (Sec. 22), are not stated except in general terms, following almost literally the language of the statute. The statute (Sec. 18) provides that the Tax Collector shall issue to the purchaser a certificate stating substantially the facts constitutive of the authority of the Tax Collector to sell and convey the premises, among which are, that the property was assessed, giving (when known) the name of the person to whom it was assessed; that taxes were levied upon it according to law; that these taxes had not been paid; that publication of the intention to sell for taxes was made, as provided by law, and describing the manner of said publication, etc. The Tax Collector seemed to content himself with a statement in his certificate and deed, that "Taxes for State and County purposes were duly levied by the Legislature, and by the Board of Supervisors of Contra Costa County, for the year 1858–1859, upon all property within said county, not exempt by law from execution;" also, that "all of said property was duly assessed by the Assessor of said county," and that the premises in controversy, according to the duplicate assessment roll, "were assessed, as aforesaid, to 'Joaquin Castro and wife, and all claimants known or unknown,' and that the taxes thereon were not paid;" and also, "that on the Saturday next preceding the third Monday in November, 1858, I completed a list of all persons and property then owing any taxes, called the delinquent tax list; and on or before the fourth Monday in the said November, I caused said list to be published, giving, in said publication, the name of the owner (when known), and of all owners and claimants known or unknown."

O'Grady *v*. Barnhisel.

Perhaps no doctrine is better settled than that no intendment is to be made in favor of the regularity of proceedings of courts or officers of inferior or special jurisdiction. (*Whitwell* v. *Barbier* 7 Cal. 64; *Haynes* v. *Meek*, 10 Id. 116; *Foot* v. *Stevens*, 17 Wend. 483; *Hart* v. *Seixas*, 21 Id. 40; *Bloom* v. *Burdick*, 1 Hill, 139; *Sharp* v. *Spier*, 4 Hill, 86; *Striker* v. *Kelly*, 7 Id. 25, 29; *Borden* v. *Fitch*, 15 Johns. 121; *Mills* v. *Martin*, 19 Id. 7; *Bigelow* v. *Stearns*, Id. 39; *Jones* v. *Reed*, 1 Johns. Cas. 20.)

The recitals in a tax deed are not, unless made so by statute, evidence against the owner of the property; but the facts recited must be proved by evidence *aliunde*, and the *onus probandi* rests upon the purchaser, or those claiming under him, to prove the facts upon which his alleged title depends. (See *Sharp* v. *Spier* and *Striker* v. *Kelly*, *supra;* Blackwell on Tax Titles, 93, 94, and the many cases there cited.) But it may be answered to the argument and authorities on this point, that our statute makes the tax deed which contains a substantial statement of the matters stated in the certificate, *prima facie* evidence of title in the grantee, and even conclusive evidence of the matters by it set forth. This may be even so; yet, nevertheless, it is not any the less necessary that the facts constitutive of the power to sell and convey, and on which the purchaser's right and title is made to depend, should be proved. The statute has not shifted the burden of proof from the party who would sustain such right and title; but has furnished a different mode of proof, by providing that a certificate shall be made by a certain officer, embodying a statement of essential facts, which, with others that must transpire subsequently, before a conveyance can be made, shall be, by the same officer, set forth in the tax-deed; and that this deed, containing therein a statement of the performance of the acts and the occurrence of the facts which operate to divest the owner of his estate, and transfer it to the purchaser, shall be the witness; or, in other words, the evidence of the performance of such prerequisite acts, and the occurrence of the essential facts. Such deed, bearing witness of the essential acts and circumstances, must be produced by the party relying upon it; otherwise, he must share the fate of all litigants who fail to prove what they allege.

Neither the certificate nor deed, under which plaintiff claims the land, shows that taxes were levied on it according to law. It is not enough for the Tax Collector to certify, in terms, that taxes were levied on the land according to law. He should state what was done and *when* done. If it was undertaken to be done after the first Monday of March, then taxes were not levied according to any law. (Act of 1857, 339, Sec. 42.)

Would any Court tolerate the assumption of an inferior officer in declaring that that was done according to law, which a Court of superior jurisdiction would not so determine without evidence of it? Unless taxes were levied on this land as required by the statute, the tax did not become a judgment against the person, or a lien against the property; because before then the tax must have been levied as provided by this act. By a line of decisions that have hitherto stood unbroken, the law has been firmly established, that in order to divest the owner of his land, and transfer it to another by means of sales for taxes, it is essential that every act and thing constitutive of the officer's authority to sell, must precede its exercise. (4 Wheat. 77; 6 Id. 119; 4 Hill, 86; 7 Id. 29; 1 Leigh, 250, 251; 10 Cal. 632; 13 Id. 618; Blackwell on Tax Titles, 45–60.) Otherwise the sale is *coram non judice* and void.

The twenty-third section of the act says the deed shall be conclusive proof of the matters by it set forth. Is the statement of the Tax Collector in the certificate and deed, that " by virtue and authority of law, and according thereto, taxes for State and county purposes were duly levied by the Legislature, and by the Board of Supervisors for Contra Costa County, for the years 1858–1859, upon all the property within said county not exempt by law from execution; that all said property was duly assessed by the Assessor of said county," the setting forth any matter of fact done and performed by the Supervisors or Assessor? An officer who certifies that a series of acts were done according to law, or duly or legally done, does not state any traversable fact. Such words in pleading have in general no effect. For such terms are not only indefinite, but offer matter of law instead of fact, and consequently are not traversable. (Gould's Plead. 182, Sec. 29.)

O'Grady *v.* Barnhisel.

*E. W. F. Sloan* and *George Cadwalader*, for Respondent.

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

This is an action of ejectment, in which the plaintiff recovered upon a tax deed purporting to have been executed on a sale for taxes under the Revenue Act of 1857. The deed was admitted in evidence against the objection of the defendants, and various grounds are now urged in support of the objection thus taken. These grounds involve the construction of certain provisions of the act referred to, and attack the validity of the deed on account of a supposed non-compliance with these provisions. It is contended that the matters, a statement of which is required by the act in order to render the deed effectual, are insufficiently set forth, and that the deed is therefore inoperative. Sec. 18 of the act provides that " after receiving the taxes and costs for any property sold, the Tax Collector shall, as soon as practicable, issue to the purchaser a certificate in duplicate, stating substantially that the property was assessed," etc.; specifying particularly the matters to be stated. Sec. 22 provides that the deed shall state the same matters substantially as stated in the certificate; and Sec. 23 provides that a deed conforming to the requirements of the act shall be *prima facie* evidence of title in the grantee.

The deed in this case states that the property was duly assessed, and that the taxes were levied upon it according to law; and states in the same manner other matters required by the act. The defendants claim that this mode of statement is not sufficient, and that there is no authority in the act for a deed setting forth the matters necessary to be stated in the forms of legal conclusions. Their position is that the deed must state the facts, and that the existence of these matters must appear from the facts stated; and that a statement amounting merely to a conclusion of law is not within the meaning of the act. This view is urged with much earnestness and force of argument; but a careful consideration of the act leads us to a construction different from that adopted by the learned counsel. The act must be construed with reference to the

O'Grady *v.* Barnhisel.

objects intended to be accomplished by it, and it will hardly be claim-
ed that an interpretation which defeats this object is admissible. Of
course, the primary object was to provide revenue for the support
of the Government, and the provisions in question constitute a part
of the machinery devised for that purpose. The stringency of
these provisions was intended to facilitate the collection, and to
overcome as far as possible the difficulties which had always been
experienced in enforcing payment. It had become proverbial, that
a tax title was no title at all; and a sale for taxes was as near a
mockery as any proceeding having the appearance of legal sanc-
tion could be. The principal cause was the difficulty in proving
the various steps essential to the validity of such a sale; and the
intention was to change the rule of evidence upon that subject, and
throw the burden of proof upon the party asserting the invalidity.
The view contended for would entirely defeat this intention; for if
the facts are to be stated in the deed, the effect is precisely the
same as to require them to be shown *aliunde.* The only difference
is in the mode of proof, and the embarrassment is rather increased
than diminished; for if any material fact be omitted, the deed is
invalid, and cannot be given in evidence. The purchaser is sub-
jected to the double risk of an error in the previous proceedings,
and a mistake in setting these proceedings forth in the deed, either
of which would be fatal. These results are plainly in contraven-
tion of the purpose intended, and the language of the act is no less
conclusive. The general provision is, that the matter specified shall
be stated; but in respect to the publication of the notice of sale,
it is provided that the manner of publication shall be described. If
it were intended that the same particularity should be observed in
other respects, that intention would doubtless have been expressed;
and the maxim *expressio unius est exclusio alterius* applies. We
regard the deed as conforming substantially to the requirements of
the act; and our conclusion is, that no error was committed in
allowing it to be given in evidence. It is true, some of the mat-
ters set forth are stated by way of recital; but as they distinctly
appear, there is nothing in the manner of stating them, for which
the deed could properly have been rejected. The point in regard
to publication is more of a criticism than an objection, for the deed

O'Grady *v.* Barnhisel.

undoubtedly shows that the publication was made as provided in the act.

This disposes of the questions arising upon the face of the deed, and brings us to the consideration of certain matters relied upon as invalidating the sale. The property was assessed to Joaquin Castro and wife, " and all claimants and owners known or unknown," and it is objected that Castro and wife were not the owners, and that the assessment was insufficient and void. The evidence shows that the property had belonged to the wife, and that she, together with her husband, had conveyed it to an infant daughter, who held it at the time of the assessment. The defendants, however, were in possession of it, and they contend that it was necessary to assess it either to them or to the owner, and that assessing it to Castro and wife was a fatal error. The act provides that property shall be assessed to the " person, firm, corporation, association, or company owning it, or having the possession, charge, or control of it, and to all owners and claimants known or unknown." The position taken ignores that portion of the assessment relating to "claimants and owners known or unknown," and counsel regards it as superfluous and nugatory in determining the effect of the assessment. As the defendants were in possession, he considers the assessment a mere nullity, and contends that an assessment to " owners and claimants known or unknown " is of no validity, unless the possession is vacant. This view is in conflict with what we understand to be the meaning of the act, and we think that counsel has mistaken the purport and object of the provision referred to. The words " and to all owners and claimants known or unknown," were intended to be incorporated in every assessment; and their effect is to bind the property, irrespective of the ownership or possession. The assessment is required to be made to the owner or possessor, and as against the person assessed it operates as a judgment, and has the force and effect of an execution upon all property owned by him in the county. It is also to be made to " owners and claimants known or unknown," and the intention was that it should be effectual as against the property regardless of the person, placing it in this respect upon the footing of a proceeding *in rem.* The counsel reads the act as requiring

the assessment to be made to the owner, if known; if the owner is unknown, to the person in possession; or if the possession is vacant, to the owner as unknown. This clearly is not the proper reading, for the provision is that it shall be made to the owner or person in possession, " and to all owners and claimants known or unknown." Whether made to the owner himself, or to the person in possession, it is also to be made to " owners and claimants, known or unknown," and the provision as understood by counsel is inconsistent with itself. It may be claimed as resulting from this view, that the omission of these words would invalidate an assessment, though correctly made as to the person, and that a compliance with both conditions is necessary to render the assessment effectual. This, however, can hardly be considered a reasonable construction, for the additional clause was evidently intended as a precautionary requirement, the object being to avoid the consequences of an error in regard to the person. The language used is inconsistent with any other interpretation, for it includes owners and claimants that are known, as well as those that are unknown, and the effect upon them was intended to be the same. If the proper person is assessed, no advantage could be derived from assessing him again in a different form, and the assessment would not be affected by a failure to do so. It is only where a mistake is made in this respect that the general words of the provision are important; and the object in requiring them could only have been to provide a cure for the mistake, so far as to give validity to the assessment as against the property. We regard the act as creating two remedies; one against the person and the other against the property, each having a distinct and separate existence, and the efficiency of the one not depending upon that of the other. The object was to compel a prompt observance of the duty devolving upon the citizen to pay his taxes, and an assessment binding at once the person and the property was resorted to as the means best calculated to accomplish that object. It is no answer to say that the owner may be taken by surprise, and lose his property without any fault or negligence on his part, for he has an easy method of obtaining information, and nothing to do but to pay his taxes. He is as likely to be surprised by an assessment to the person in possession, as by an assessment to " owners and

O'Grady *v.* Barnhisel.

claimants known or unknown," and the argument applies with equal force to the two modes of assessment.   It it our duty to construe the act in accordance with the intention of its framers, and the rule of strict construction so earnestly invoked would be grossly misapplied if used to defeat that intention.   In the view taken by us, it is immaterial to whom the property is assessed ; for an assessment, in the form required, binds the property itself, and is not vitiated by a mistake as to the person.   It is true, the act provides that the Assessor shall make diligent inquiry to ascertain the owner ; but a mere mistake as to the fact of ownership is not sufficient to invalidate the assessment.   It is possible that a willful omission, or even negligence in the performance of the duty enjoined, would render the assessment invalid ; but where the assessment is made upon due inquiry and in good faith, a mistake of this character will not affect it.   In the present case, it is evident that the error committed was not the result of negligence or design, and it is not pretended that any person was misled by the manner in which the assessment was made.   There is no evidence that the Assessor was aware of the conveyance, and the presumption is that he did his duty, and used reasonable diligence to ascertain who the owner was.   It is true, the records of the county would have furnished the necessary information, but these records were only notice to purchasers and incumbrancers, and no inference of actual notice can be drawn from them. Admitting, however, that he had full knowledge of the fact, it by no means follows that the error arose from neglect of duty or any improper conduct.   The daughter receiving the conveyance was a minor, and attained her majority only a few months prior to the assessment, up to which time her father had the control and management of her property.   During her nonage he was the proper person to assess it to, and no advantage would have resulted from the use of her name, nor the assessment have been more or less effectual on that account.   The assessment to him three or four months after she became of age was a mistake, requiring unusual care in the Assessor to be avoided, and there is no doubt that it was innocently made.

A point is taken in regard to the figures in the assessment roll, but we are unable to discover anything amounting to a non-compli-

ance with the law.    It is claimed that the figures are not intelligible, and that the items of the tax are so stated as to render explanation necessary to ascertain the amount.    It appears, however, that these items are set down in columns, and that each column is appropriately ruled for dollars and cents, and its meaning indicated by the proper heading.    The proof upon this subject is derived from the testimony of the collector, but the record shows that he testified from the roll itself.

The counsel is mistaken in asserting that the property was sold for more than the amount due.    He states that the items in the assessment roll foot up at fifty-one dollars, but the slightest care would have shown him that they are correctly footed up at fifty-two dollars and fifty cents.

The only error disclosed by the record is in the award of damages, the amount awarded being greater than the amount claimed. For this error it would be necessary to reverse the judgment, but the plaintiff offers to remit the excess, and we shall order a modification to that extent.    The judgment thus modified is correct, and must be affirmed.

Ordered accordingly.

After the foregoing opinion had been delivered, a rehearing was granted.

Upon the rehearing, CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

In this case a rehearing was granted, and it has again been submitted upon some additional questions not directly passed upon in the former opinion.    We adhere to the principles there laid down, and it will therefore, be considered as forming part of the present opinion.

Upon the rehearing, it was urged that the amount for which the property was sold exceeded the amount of taxes and costs actually due in the sum of five and one-half cents, which is estimated as follows : Amount of taxes, fifty-two dollars and fifty cents ; five per cent. thereon for delinquency, two dollars and sixty-two and one-half cents ; statute allowance for certificate of sale, two dollars ;

O'Grady *v.* Barnhisel.

costs of advertising the property, fifty cents.   Total amount the property should have been sold for, fifty-seven dollars and sixty-two and one-half cents ; amount for which the property was sold, fifty-seven dollars and sixty-eight cents—making an overplus of five and one-half cents.   But the respondent insists that there should be included in the estimate of taxes and costs the sum of fifty cents for filing the certificate of sale in the Recorder's office, as required under Secs. 20 and 21 of the Revenue Law of 1857, under which the property was sold, and that by adding this sum to the other amounts of taxes and costs, the result will be that the property sold for forty-four and one-half cents less than the amount really due. We do not think this item is a proper one to be included in the amount for which the property was to be sold.   Sec. 17 of the act in question provides that the person who will take the least quantity of the tract or the smallest portion therein of the interest taxed, and "pay the *taxes and costs due,* including two dollars which the Tax Collector shall be entitled to receive for the duplicate certificate of sale, shall be declared to be the purchaser."   The evident meaning is, that the purchaser shall pay the "costs due," at the time of the sale, as any other costs cannot properly be said to be "due ;" and as it specially includes only the costs of the certificates, which accrued after the sale, it is clear that it was not intended to include any other subsequent costs.   It follows that the fees of the Recorder for filing the certificate should not be included. Those fees are for the purchaser to pay when he files his duplicate certificate with the Recorder, as the filing is for his benefit.

The respondent insists, however, that the overplus in this case is so small that the sale should not be invalidated on that ground, and that the maxim *de minimus non curat lex* is properly applicable. We are satisfied that we ought not to treat the sale as void for this trifling excess.   If we could in any way see that the owner of the land had suffered any injury by the mistake in the estimate by the Tax Collector of the amount due, it would be very different.   The tract assessed for taxes, the whole of which was bid off by the purchaser at the tax sale, includes, it seems, about two hundred acres ; and it can hardly be presumed that the purchaser would have bid for a less quantity had the amount been stated at the trifling sum

O'Grady *v.* Barnhisel.

of five and one-half cents less.   The mistake may have occurred in the calculation, or it may have been occasioned by an error in making or copying the figures; but it is evident that it was unintentional, and without any design to injure the parties interested. If the owner of the property had offered to redeem it within the time prescribed by law, and had tendered the amount really due at the time of the tax sale, with the proper statutory allowances, his redemption would have been good, though he should have omitted in his tender this excess in the sale; but no such tender was made. If this had been a sale under an ordinary judgment and execution, it could not be pretended for a moment that the sale would have been void on this account.   It is true, that the mode of selling property at a tax sale is different from an ordinary sale on execution; but that difference is not sufficient to hold a tax sale void for so trifling a matter.   Sec. 32 of the Act of 1857 provides, that every tax levied under the provisions or authority of this act is hereby made a *judgment* against the person and a *lien* against the property assessed; which lien shall attach, and judgment date, as of the first Monday in March of each year, and shall have the full force and effect of an execution against all property of the delinquent," etc.   It is evident that the Legislature intended by this provision to subject sales of property to the same legal rules as govern sales to enforce judgments and liens against property in the ordinary course of legal proceedings, although the mode of bidding is different.   In New Hampshire, executions are extended upon the real estate by appointing appraisers, who set off to the judgment creditor a sufficient quantity of the land to pay the amount due on the execution at its appraised value, which operates as a conveyance of the property and a satisfaction of the judgment without any sale at public auction; and the Courts there hold that such extent is not void because the appraised value of the land thus set off exceeds by a trifling sum the amount due on the execution. (*Burnham* v. *Aiken*, 6 N. H. 307; *Avery* v. *Bowman*, 40 Id. 453.)

The judgment as modified by the previous opinion is affirmed.