Argued Jan. 25, decided Feb. 7, rehearing denied March 14, 1911.

## WALTON v. MOORE.

[113 Pac. 58: 114 Pac. 105.]

TAXATION—TAX SALES—RETURN—RECITALS — AMOUNT OF INTEREST —
        NECESSITY.

1. Sess. Laws 1901, p. 250, § 24, requiring the sheriff to publish a notice stating the time and place of a tax sale, describing the parcels to be sold, stating the amount of taxes, interest to date of sale, and the penalties accrued against each tract, is mandatory, so that a statement in a notice that the amount of interest due on the tax was $1.12 when the amount on taxes due was $1.05 made the sale void.

TAXATION—TAX SALE—COMPLIANCE WITH STATUTE.

2. A stricter compliance with the statutory requirements is necessary in proceedings to sell land for taxes than in execution sales; a very strict compliance being necessary to make a tax sale valid.

TAXATION—ON APPEAL.

3. Upon affirming a judgment, in a suit to quiet title, in which plaintiff relied upon a tax deed, adjudging that the sale was void and awarding plaintiff the money paid for the land at the sale, with 20 per cent interest and the taxes since paid by him, with 10 per cent interest, and awarding the land to defendant, neither party will be allowed costs.

TAXATION—ACTIONS TO CONFIRM OR TRY TITLE—TENDER OF AMOUNT OF
        PURCHASE MONEY—SUFFICIENCY OF TENDER.

4. Laws 1901, p. 255, § 32, provides that in every action to set aside, .or to quiet title against, a sale of land for taxes, a party claiming to be

the owner must tender by his first pleading and pay into court the purchase price for which the land was sold. Plaintiff in an action claimed the fee, and defendant answered setting up his claim by patent from the United States, but when it appeared at the trial that plaintiff was claiming under a tax deed, the defendant at the suggestion of the court filed a further answer and made the tender required by law. *Held,* that the defendant's amended answer became his first pleading, and hence a compliance with the statute.

TAXATION—ACTIONS TO CONFIRM OR TRY TITLE—TENDER—PLEADING—
    PLEADING IN ABATEMENT—EQUITY.

5. In action at law, where the plaintiff seeks to recover land sold from him for taxes, a plea in abatement is the proper pleading by which to raise the question of failure to tender the amount paid at the sale, but in a suit in equity the court may, in its discretion, allow the answer to be amended at any time so as to raise the question of tender.

TAXATION—ACTIONS TO CONFIRM OR TRY TITLE—PARTIES—MORTGAGOR.

6. The defendant seeking relief from a tax deed made a quitclaim deed of the land in controversy to a third person, who made affidavit, as did the defendant, to the effect that the deed was intended as a mortgage, which was not contradicted, and after the deed the defendant asked leave to file answer. *Held* that, as both defendant and the grantee were estopped from claiming that the deed was other than a mortgage, the defendant was still the real party in interest.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—INTENTION OF PARTIES.

7. A deed intended as a mortgage will be treated as such so far as the courts can do so without injury to the rights of third parties.

TAXATION—ACTION TO CONFIRM AND TRY TITLE—PLEADING.

8. Where the defendant in an action to quiet title denies plaintiff's title, he may take advantage of the defect in the notice of a tax sale, as it is not necessary that it should be specifically pleaded in the answer.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by J. J. Walton against George L. Moore to quiet his title to lots 3 and 4 and the E. ½ of the S. W. ¼ of section 30, township 16 S., range 6 W., in Lane County, Oregon.

Defendant answered denying plaintiff's title, and setting up title in himself. On the trial defendant amended his answer by assigning certain alleged defects in the tax proceedings, which he claimed rendered the tax deed invalid, and tendered to plaintiff with the pleading the amount that was bid for the property, the subsequent taxes paid by plaintiff. Plaintiff introduced his tax deed

and rested. Defendant introduced some part of the assessment roll and part of the sheriff's return—what part cannot be ascertained by the transcript—and also rested. Subsequently the case was reopened, and plaintiff introduced the whole of the sheriff's return. The court found for plaintiff generally upon all the issues raised, except as to the publication of the notice of sale, and tender of the sum due for taxes, and upon the issue as to notice found as follows:

"That certain pages of the report of the sheriff on sale of property for delinquent taxes were offered in evidence at the trial and copies of said pages were substituted; that there was no affidavit attached to said report of the sheriff, signed by the printer, his foreman, or principal clerk, showing that the notice of sale had been printed in the newspaper, and the only proof of such publication was the certificate of the sheriff that said notice had been published, and, while there was no direct evidence that such an affidavit had or had not been filed, yet plaintiff offered an affidavit made by the printer long after the sale for the purpose of showing that said notice had been published, and it is fair to infer from this circumstance alone that no proper affidavit was filed or made before the sale or at the time the sheriff made his report of sale, and the court finds from the evidence that no affidavit signed by the printer, his foreman, or principal clerk was filed with the sheriff's report of sale, and no such affidavit was filed until after the execution and delivery of the tax deed hereinafter referred to."

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Walton & Ness*, with an oral argument by *Mr. Sjur P. Ness*.

For respondent there was a brief and an oral argument by *Mr. G. F. Skipworth*.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The defendant urged several objections to the validity of the tax proceedings, but the return of the sheriff in

our opinion shows the sale to have been absolutely void. Section 24, Sess. Laws 1901, p. 250, under which statute the proceedings were had, among other things requires the sheriff to publish a notice "stating the time and place of the sale and a description of the several parcels of real property to be sold, the amount of taxes, interest to date of sale and penalties accrued against each tract." The taxes on defendant's land became delinquent April 4, 1904, and the sale took place January 14, 1905. The amount of interest due on said tax was $1.05. In the notice of sale it was stated to be $1.12.

The statute, requiring the amount of accrued interest to be stated in the notice, is mandatory, and a misstatement of it renders the sale void. Commenting on a similar mistake the supreme court of Massachusetts say:

"The advertisement did not state the amount of tax assessed on the land, but stated a wholly different amount, and, for all legal purposes, might as well have contained no statement whatever of the amount of the tax. To comply with the statute, the exact amount must be given. A deviation, however small, is fatal, because a rule of law cannot be made to fluctuate according to the degree or extent of its violation." *Alexander* v. *Pitts,* 7 Cush. (Mass.) 503.

See Cooley, Taxation, 934, and Black, Tax Titles, § 207, where the above language is quoted with approval.

2. While the proceedings regarding the sale of land for taxes is in many respects analogous to sales of real property on execution, yet there is abundant reason for requiring a stricter compliance with statutory requirements in the former than in the latter class of cases. Sales on execution are usually the result of the voluntary contracts or acts of the debtor. There is an opportunity to realize something approaching the full value of the property sold and only so much need be sold as will satisfy the debt. While in tax sales the liability is involuntary

and the delinquency usually the result of poverty or accident, and however great the value of the property, it cannot be sold for more than the amount of the tax. Where, as found by the court in the case at bar, a man under the mistaken idea that his property was not taxable until he had secured his patent from the government, has property worth hundreds and possibly thousands of dollars, sold for the paltry sum of $14, he certainly has the right to demand that every provision of the law intended for his benefit shall be strictly complied with before he is subjected to a forfeiture. The objection here sustained to the sale may seem technical, but, if so, it is a technicality that works out evenhanded equity.

3. The plaintiff gets back the money he paid for the land, with 20 per cent interest, and the taxes he has since paid, with 10 per cent interest, and the defendant recovers his land. Both parties ought to be satisfied, and, in view of this fact, neither party will recover costs.

The decree of the circuit court is affirmed.

AFFIRMED.

---

Rehearing denied March 14, 1911.

## ON PETITION FOR REHEARING.

[114 Pac. 105.]

MR. JUSTICE MCBRIDE delivered the opinion of the court.

4. In the motion for rehearing we are asked to construe Section 32, p. 255, Laws 1901, which, so far as it relates to the matter under consideration, is as follows:

"In every action, suit or proceeding to set aside a sale of land for taxes, or to quiet the title against such sale, or to set aside the cloud thereof, or to recover the land sold, whether before or after the deed, the party claiming to be the owner as against the party claiming under the sale must tender in his first pleadings in such case, and pay into court at the time of filing the same, the

amount of the purchase price for which such lands were sold, together with twenty per cent addition," etc.

In the case at bar there was nothing in the complaint filed which indicated that plaintiff was relying upon a tax deed; nor was there anything in the original or first amended answer showing that defendant was seeking relief against a tax deed. Plaintiff claimed to be the owner in fee and in possession of the property; and defendant answered, setting up his title by patent from the United States. Upon the trial, when it became apparent that plaintiff was relying upon a tax deed, defendant by leave, and in fact at the suggestion, of the court filed a further answer, specifying certain objections to the deed and made the tender required by law. The last amended answer when filed became defendant's first pleading, and the preceding answers were *functus officio* and out of the case.

5. The course to be pursued in suits in equity, where the tax proceeding is left a matter of evidence, and not at issue in the pleadings, is not clear. In actions at law, where the plaintiff seeks to recover land sold from him for taxes, we have held that a plea in abatement was the proper method by which to raise the question of failure to tender the amount paid at the sale. In a suit in equity, where like conditions exist, we think the court, in its discretion, may allow the answer to be amended at any time so as to permit the tender. Of course, if there is anything in the circumstances attending defendant's delay to tender the money sooner which indicates inexcusable neglect or bad faith, it is within the power of the court to refuse to permit the amended pleading to be filed, and to deny the defendant relief. The law has not made an inadvertent failure to comply with the statute a ground for absolute forfeiture of a defendant's estate in the property, and we shall not do so by construction.

6. We are also asked to decide whether defendant was the real party in interest when he applied for leave to answer. It appeared from the testimony that, previous to asking leave to file his answer in this case, he made a quitclaim deed of the property in controversy to one Dysart, but that both he and Dysart testified that the deed was intended merely as a mortgage to obtain money to carry on this litigation, and this is not contradicted.

7. A deed intended as a mortgage will be treated as such so far as the courts can do so without injury to the rights of third parties. Both defendant and Dysart have estopped themselves by their affidavits filed in this case from claiming that the deed in question is other than a mortgage, and, if plaintiff had desired further assurance in this matter, he could have amended his complaint so as to make Dysart a party.

8. As to whether proof of publication of the notice of sale should have been filed with the sheriff's return, we have expressed no opinion, for the reason that we find no evidence in the record sufficient to overcome the presumption that it was so filed. We think a denial of plaintiff's title was sufficient to permit defendant to take advantage of the defect in the notice of sale pointed out in our original opinion, and that it was not necessary that it should be specifically pleaded in the answer.

Counsel suggests that the discrepancy between the actual amount of accrued interest and the amount erroneously stated in the notice of sale is so small that we should disregard it as unsubstantial. In other words, that a small violation of the law is no violation on the principle, "*De minimis non curat lex.*" But in proceedings *in invitum,* where it is proposed to take a man's property for one thirty-fifth of its assessed value, the law does care for small things, and will not infrequently consider them to prevent an inequitable forfeiture. From the case of *Shylock* v. *Antonio,* reported at large by

Shakespeare, down to the last volume of Oregon reports, the courts have held that statutes providing for a forfeiture shall be strictly construed, and far be it from this court to say that a sum of money, coined by the government of the United States, which under certain circumstances it is a penitentiary offense to steal, and which is sufficient to furnish bread to the hungry, cheering drink to the thirsty, and to the miser the means of contributing to charity, shall be treated as unsubstantial in a case of this character.

The petition is denied.

AFFIRMED : REHEARING DENIED.