Submitted on briefs December 11, 1924, affirmed January 6, rehearing
denied January 27, 1925.

## L. C. EASTMAN *v.* O. F. HEISLEY ET AL.

(231 Pac. 961.)

**Judgment—Conclusive on All Questions Within Issue Actually Litigated.**

1.   Decree of court of competent jurisdiction is conclusive on all
questions within issue actually and formally litigated.

**Licenses — Evidence Held not so Convincing of Reasonableness of
Land Owner's Demand Concerning Mode of Enjoying License as
to Require Cancellation for Failure to Comply With Demand.**

2.   Where defendants had right to maintain drain-pipe across plaintiff's lot on condition that they keep it out of way of plaintiff's good-
faith use of his property, and after defendants had complied with
former decree of court requiring lowering of drain to avoid inter-
ference with plaintiff, latter demanded that it be lowered ten feet
more to accommodate swimming-tank, *held,* that evidence was not so
convincing of good faith and reasonableness of such demand as to
require cancellation of license for failure to comply therewith.

**Equity—Maxim, "He Who Seeks Equity must Do Equity," Defined.**

3.   Maxim, "He who seeks equity must do equity," signifies that
equitable relief will not be granted to a party unless he has acknowl-
edged and conceded, or will admit and provide for, all equitable
rights, claims and demands justly belonging to his adversary, which
are necessarily involved in the controversy.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit to enjoin the defendants from main-
taining a tile drain across the east half of Lot No. 12,
in Brown's Addition to Silverton, Oregon, and for
the sum of $500 damages, arising from the mainte-
nance thereof. From a decree of the lower court
dismissing the plaintiff's suit and awarding defend-
ants their costs, plaintiff appeals.

AFFIRMED.   REHEARING DENIED.

1.   See 15 R. C. L. 949.
2.   Revocability of executed license on faith of which licensee has
incurred expense, see notes in 2 Ann. Cas. 787; 7 Ann. Cas. 706;
13 Ann. Cas. 843; Ann. Cas. 1913A, 74; Ann. Cas. 1914C, 920. See,
also, 17 R. C. L. 578.

For appellant there was a brief over the name of *Mr. Custer E. Ross.*

For respondents there was a brief over the names of *Mr. L. H. McMahan* and *Mr. L. J. Adams.*

BROWN, J.—The defendants are osteopath physicians and own and maintain, as a private hospital, a building containing forty-five rooms, heated by a furnace situate in the basement thereof. For the purpose of draining the basement and thus preventing the extinguishment of the fire in the furnace during the rainy season, in 1918 they obtained from J. M. Brown a right of way to construct and maintain a tile drainage system across Lot No. 12, Brown's Addition "A" to Silverton, Oregon, which lot was then owned by Brown in fee. In pursuance of their license acquired from Brown, the defendants constructed and laid a tile drain from their basement, across Fiske Street, in Silverton, Oregon, and across Lot No. 12, to Silver Creek. This is the drain involved in this suit. About a year later, the plaintiff, with full knowledge of the right of these defendants to maintain the tile drain which they had previously constructed across Lot 12, acquired title to the east half of this lot, and, in March, 1920, commenced the construction of a foundry building thereon, the same being constructed over the drain. Later, the drainpipe was broken and plugged up by plaintiff's tenants, flooding the basement of defendants' hospital. Plaintiff refused to allow the defendants to enter upon his premises for the purpose of repairing the damage. Thereupon, these defendants instituted a suit against this plaintiff, C. J. Johnson and Edna L. Johnson, his wife, for the purpose of enjoining them

from interfering with the drain, and for damages. The trial resulted in a decree enjoining the defendants in that case from interfering with the drain, awarding plaintiffs $190 damages, and authorizing them to enter upon the premises of the defendants therein in order to repair the drain, and to lower it, if necessary, "to make it of its former efficiency, not exceeding 2 feet below the basement floor." The case was appealed to this court, where it was affirmed and the rights of the parties finally determined. See *Heisley et al.* v. *Eastman et al.,* 102 Or. 137 (201 Pac. 872).

In the former suit the Heisleys, defendants herein, asserted that they had an unconditional license to lay and maintain the tile drain across the property occupied by the foundry. Eastman admitted the granting of a license to Heisleys by his grantor, but asserted that the same was conditional; that Heisleys were to keep the drain out of the way of any use to which Brown or his assigns might wish to put the real property; that the condition had been breached; and, furthermore, that the license was revocable on account of the lack of a consideration therefor. Upon appeal, this court held that the right to maintain the tile drain across the lot was conditional; that the condition had not been violated, and that the license to construct and maintain the drain was valid. In announcing the opinion of this court, Mr. Justice HARRIS wrote:

"If the drain interferes with the use of the foundry the plaintiffs must lower the drain enough to avoid such interference or else forfeit their right to maintain a drain across Eastman's premises; and in order to lower the drain the plaintiffs are entitled to enter upon the Eastman property. It may be that the parties on one side or the other will desire to

have a judicial decision as to whether or not a free and untrammeled use of the foundry floor will require a lowering or alteration of the drain; and in order that the controversy may be settled as completely as is possible, the cause will be remanded so that the trial court may write at the foot of the decree such directions to the parties as may appear to be proper concerning the question of the immediate lowering or alteration of the drain.''

In compliance with this direction, the Circuit Court, on February 15, 1922, found and ordered:

''This court finds that it is proper that the line of drain shall be lowered not exceeding 24 inches below the basement floor, following the line of tile now in as near as practicable. The tile to be 6 inches in diameter, open joint, red tile. The work to be done by the plaintiffs and completed on or before 60 days from the date of this order. * * The plaintiffs, for such purpose, are to be permitted free access to enter upon the defendant's premises, on which is situate the foundry, for the purpose of lowering such drain. The work, when commenced, to be prosecuted with due diligence until completed.''

Following the receipt of this order, the directions were complied with by the Heisleys, and the evidence shows that the work was well performed.

The pleadings show that a few weeks thereafter Eastman, concluding to put his real property to further beneficial use, determined to construct thereon a natatorium or swimming-tank, which would again necessitate the lowering of the drain tile. He asserted that to prevent the interference of the drain with his new undertaking, it would be necessary for the Heisleys to lower it to a depth of about ten and one-half feet below the surface of the ground. Notice was served upon them to lower the drain, and, upon their alleged failure to comply therewith, Eastman

notified them that their right to cross his land with the drain was terminated, and instituted this suit.

1. The defendants' right to construct and maintain a drainage system across the real property of the plaintiff was adjudged in the previous suit. For full particulars concerning the facts in that suit, and its determination by this court, see *Heisley et al.* v. *Eastman et al.*, 102 Or. 137 (201 Pac. 872).

It is a well-established rule of law that the decree of a court of competent jurisdiction is conclusive on all questions within the issue, actually and formally litigated: *Barrett* v. *Failing*, 8 Or. 152; *Ruckman* v. *Union Ry. Co.*, 45 Or. 578 (78 Pac. 748, 69 L. R. A. 480); *United States National Bank* v. *Shehan*, 98 Or. 155, 161 (193 Pac. 658); *Runnells* v. *Leffel et al.*, 105 Or. 346 (207 Pac. 867).

"A fact or matter in issue is that upon which the plaintiff proceeds by his action, and which the defendant controverts in his pleadings." *Garwood* v. *Garwood*, 29 Cal. 514.

Under the law, as announced by the opinion in the former suit, the Heisleys have the right to maintain their drain-pipe across Eastman's lot, on the condition that they keep it out of the way of Eastman's good-faith use of his property. Their respective legal rights concerning the drain having been adjudicated in the former suit, the matter for us to determine here is: Should equity lend its aid to Eastman in his attempt to cancel the right of the Heisleys to maintain their drain-pipe across the lot referred to?

From an examination of the evidence and the briefs of the parties, we are convinced that each party deems the other unfair, unreasonable and arbitrary. In his brief, plaintiff says of defendants:

"The respondents showed no disposition, at any time, to even consent to adjust the matter amicably, but were determined to drag the matter before the courts. * * Heisley wants the benefits, i. e., the right to maintain the tile * * by any * * 'hook or crook.' * * The respondents want litigation and contention; they regard it as an advertisement in their business. * * The respondent boasts of the lawsuits that he has won. * * The parties agreed upon a forfeiture, and one should be decreed here."

Through their brief, the respondents say:

"This is not, in our opinion, a suit started in good faith to adjust property rights, but one brought to annoy and punish respondents, against whom appellant has laid the full measure of his personal ill will. The controversy, once apparently settled by the courts, is renewed for the purpose of wreaking personal vengeance by this litigious appellant, to the vexatious annoyance of respondents and the courts, who cannot escape appellant's pernicious and costly activities."

They assert in their brief and by their testimony, that they have never refused to lower the drain, but that they have not complied with the demands of plaintiff because of their unreasonableness.

Likewise, the litigants' correspondence offered and received in evidence tends to show that each party was preparing for litigation, and their letters appear to be fair examples of self-serving declarations.

2. We have read the testimony with care, but, from the evidence adduced, we are not satisfied that the demand made upon the Heisleys is equitable. That the plaintiff has a right to put his property to any lawful use must be conceded. He has a right to construct a swimming-tank, and the defendants must protect that right by the reasonable maintenance of their drain. However, the plaintiff has failed to convince

us by satisfactory evidence that his demand that the defendants again lower their drainage system is a reasonable demand, or that the pipe, when lowered as now demanded, would drain the water from defendants' basement into the waters of Silver Creek. The lower court heard the testimony of the witnesses and observed their demeanor upon the witness-stand, and thus had the opportunity to note the animosity existing between the parties. It follows that the trial court was in a better position to weigh the evidence and determine the facts than are we. That the court took into consideration the plaintiff's motive, and his good faith, or lack of good faith, in again demanding the lowering of the drain, is borne out by the following pertinent observation during the trial of the case:

"Plaintiff can use his property as he sees fit, with legal limitations, but when he has determined upon one method of use he cannot, as soon as that is in operation, turn around and say, 'I am going to try something else.'"

3. From a consideration of the whole case, we refuse to aid the plaintiff in the cancellation of the defendants' license to maintain the drain from their hospital. Forfeitures are not favorites of the law: *Walton* v. *Moore,* 58 Or. 237 (113 Pac. 58, 114 Pac. 105). The fountain of equity is the maxim: "He who seeks equity must do equity." It is a principle of extensive application.

"The meaning (of this maxim) is that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and

demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject matter of the controversy.'' 1 Pomeroy's Equity Jurisprudence (4 ed.), § 385.

It follows from what we have written that the decision of the lower court should be affirmed. It is so ordered.          AFFIRMED.   REHEARING DENIED.

BELT, J., did not participate in this decision.