[S. F. No. 16432.   In Bank.   Nov. 2, 1942.]

STERLING REALTY COMPANY (a Corporation), Appellant, v. EMILY RELFE et al., Respondents.

Phil F. Garvey and Julia M. Easley for Appellant.

John J. O'Toole, City Attorney (San Francisco), Norman S. Wolff, Deputy City Attorney, Ralph Alfred Wood, Jr., and Henry F. Wrigley for Respondents.

CARTER, J.—Plaintiff appeals from a judgment denying it relief in an action to quiet title to seventy-five parcels of real property situated in the city and county of San Francisco.

The record discloses that in 1926, plaintiff was the owner of seventy-eight separate parcels of real property situated in said city and county. It is not questioned that in that year, pursuant to a street improvement ordinance of said city and county providing therefor, proceedings were regularly taken for the construction of an improvement affecting said property, the levy of an assessment thereon and the issuance of bonds for the payment of such assessment. One bond was issued against each of the seventy-eight parcels of said property. Defendant Federal Construction Company became the owner of said bonds. Each bond executed by plaintiff was payable both as to principal and interest in twenty semi-annual installments representing the amount of the assessment on each parcel of said property. Eleven of the installment payments were made by plaintiff, but it defaulted on the installment which became due February 4, 1933, and it has since been in default. On March 5, 1937, in accordance with the ordinance and at the request of the Federal Construction Company, the property

was sold by the officials of the city and county of San Francisco because of that default. It is not questioned that the sale was regular in all respects except as hereinafter mentioned. The purchaser at the sale was defendant Emily Relfe. One certificate of sale was issued to her for all of the seventy-eight parcels of property. The ordinance authorized the sale of the property upon default as specified in the bonds, the approved form of which read:

"In the event of default in the payment of any installment . . . the Board . . . is hereby authorized to sell the property *herein described* to pay the amount so due, together with the expenses of such sale.

"Such sale shall be made in the manner and form provided by law for the sale of real property upon execution. . . ." (Emphasis added.) The bond also gave the holder thereof the following remedy:

". . . the person in legal ownership of this bond, shall, in the event of such default, have the right to foreclose the lien created by the said assessment for any unpaid portion thereof, as in the case where no bond had been made or executed, and such lien shall continue until such assessment is fully paid." With reference to the sale and certificate of sale, the requirements are:

"The said Board is hereby authorized to make any sale authorized by any agreement and bond and shall issue *for each sale* an original and duplicate certificate of sale, in appropriate form, referring to this Ordinance, describing the *parcels* sold and containing the name of the purchaser; the *originals* shall be delivered to the purchaser and the duplicates shall be on file in the form of stubs in a certificate book." (Emphasis added.) A deed to the property described in the certificate is to be issued to the purchaser one year after the sale if the property is not redeemed. A year's period of redemption is allowed the owner and "all redemption money shall be paid by the Board of Public Works to the holder of the proper original certificate of sale, upon delivering up the same and receipting for the amount received."

It is plaintiff's claim that the certificate of sale and sale of the lots was void because only one certificate of sale was issued for all of the seventy-eight lots, rather than a separate certificate for each lot; that by making the certificate in that fashion

plaintiff was injured by having thereby impaired its right to redeem the lots separately.

Clearly the ordinance contemplated that each parcel of plaintiff's property be sold separately. That is true because each lot was individually assessed and each bond was a lien against the particular parcel described therein. It is the general rule that several parcels of real property separately assessed should be sold separately at a tax sale even though having a common owner. (*Stege* v. *City of Richmond,* 194 Cal. 305 [228 P. 461]; 61 C.J. 1197.) Only one certificate of sale was issued in the instant case for all of the lots and it might be construed to mean that a separate sale of each of the parcels was not had inasmuch as it refers to a "sale" (singular) and recites that "but *one* bid was received" and which was "$46,094.04 for all of said 78 lots." However, the testimony is uncontradicted and the court found that the lots were sold individually. So far as appears it must therefore be concluded that the sale itself was valid.

Nevertheless if the certificate of sale was invalid, all proceedings thereafter taken would be invalid including the ultimate deed of the property to the purchaser after the expiration of the period of redemption. The ordinance provides that "At any time before the expiration of one year from the *date of the certificate of sale*" the property may be redeemed. If the certificate of sale is invalid then the period within which the property could be redeemed would not have commenced to run. It was said in *Hinds* v. *Clark,* 173 Cal. 49, 52 [159 P. 153], involving a tax sale to the city, a void certificate issued by the city treasurer to the city and a subsequent deed to the city followed by a deed from the city to a private purchaser, in which the owner brought an action to quiet title:

"But we do not find it necessary to consider whether the latter discrepancy is error, or if so, whether it is fatal to the defendant's alleged title to the land, as we are satisfied that the failure to correctly state in the *certificate* the time 'when the city will be entitled to a deed' renders the *certificate void,* and *annuls the subsequent proceedings.*" (Emphasis added.)

It is to be noted that under the ordinance here in question a certificate of sale is to be issued "for each sale." We think it is clear that a separate sale of each parcel was necessary, hence there should have been a separate certificate of sale for each parcel. True, the ordinance goes on to provide that the

certificate shall describe the "parcels" (plural) sold, but that refers to parcels upon which a single assessment was levied, inasmuch as immediately following that clause it is said the "originals" shall be delivered to the purchaser. The words "for each sale" are specific and control over any inference that may flow from general language. ■ Inasmuch as tax proceedings are *in invitum*, the statute must be strictly followed, otherwise they are void. (24 Cal.Jur. 324.) This does not mean that where there are separate sales and all proceedings leading up to and including the sales are valid, the purchaser may not be entitled to have a corrected certificate issued to him under the same rule that entitles a purchaser at a tax sale to have a corrected deed issued to him where all of the proceedings are regular. (See *Webster* v. *Somer,* 159 Cal. 459 [114 P. 575]; *Fox* v. *Townsend,* 152 Cal. 51 [91 P. 1004, 1007]; *Routh* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1].)

■ Defendants contend, however, that the single certificate was substantially equivalent to separate certificates. It is true that the certificate in question does set forth a description of each lot but opposite thereto appears the sum due under the bond and assessment. It does not state that those are the sums for which each parcel was sold, although the total amount recited as having been bid for the lots equals the total of those sums. It is obvious, therefore, that the single certificate covering all of the lots was not the equivalent of a separate certificate of sale for each lot.

■ Defendants refer to the rules pertaining to execution sales, such as, that certain defects in a certificate of sale do not affect the validity of the sale (*Anthony* v. *Janssen,* 183 Cal. 329 [191 P. 538]), and that various instances of irregularity in such a sale do not render it subject to attack (11 Cal.Jur. 133). They also point to the statement in the ordinance that the sales when the bond is not paid "shall be made in the manner and form provided by law for the sale of real property upon execution." The sales under the ordinance are tax sales and a strict compliance with the law is required in sales of that character. It is said in *Walton* v. *Moore,* 58 Ore. 237 [113 P. 58, 59, 114 P. 105]:

"While the proceedings regarding the sale of land for taxes *is in many respects analogous to* sales of real property on execution, yet there is abundant reason for requiring a stricter compliance with statutory requirements in the former than in the latter class of cases. Sales on execution are usually the result of the voluntary contracts or acts of the debtor. There is

an opportunity to realize something approaching the full value of the property sold and only so much need be sold as will satisfy the debt. While in tax sales the liability is involuntary and the delinquency usually the result of poverty or accident, and however great the value of the property, it cannot be sold for more than the amount of the tax.'' The reference in the ordinance to the ''manner and form'' of execution sales cannot be said to require the application of the rules pertaining to execution sales to matters particularly covered by the tax ordinance, which we have seen is the case in the instant action. Contrary to the rules applied to execution sales it has been held that various defects in a certificate in a tax sale will nullify the proceedings. (See *Hinds* v. *Clark, supra; Preston* v. *Hirsch,* 5 Cal.App. 485 [90 P. 965].)

We think it is obvious that the invalidity of the certificate of sale affected the substantial rights of the plaintiff. It appears from the above quoted portion of the ordinance that the owner may redeem the property within one year after the sale upon paying the amount for which the property was sold plus a penalty, and ''all redemption money shall be paid by the Board . . . to the holder of the . . . certificate of sale, *upon delivering up the same* and receipting for the amount received.'' With only one certificate of sale for all of the parcels, it is obvious that compliance could not be had with that provision of the ordinance, if the owner desired to redeem any number of the parcels less than all of them. The purchaser would not wish to deliver the certificate of sale because he would still be entitled to it as representing his rights in the parcels not redeemed, while the owner would be entitled to have the certificate no longer outstanding and thus a cloud on his title as to the parcels redeemed. The owner's right to redeem should not be made dependent upon what the city officials might endeavor to accomplish as a solution of the dilemma, when no solution could be in conformity with the terms of the ordinance. Defendants' contention that because there has been a redemption by the owner of three of the seventy-eight parcels of the property the above difficulty is shown not to exist, is not convincing inasmuch as the circumstances of those redemptions do not appear, and we are advised of no method whereby they could have been made in conformity with the ordinance.

In connection with the question of the single certificate of

sale substantially infringing plaintiff's rights, defendants refer to the section of the ordinance reading:

"The provisions of this Ordinance shall be liberally construed to promote the objects thereof, and no error, omission, or irregularity in connection with the proceedings thereunder not affecting a substantial right of a party interested shall invalidate any of such proceedings." That section can be of no help to defendants because as we have seen a substantial right of the plaintiff has been affected.

Plaintiff urges that under the ordinance two liens are created on the property, one securing the assessment, and the other securing the obligation represented by the bonds; that the former is declared by the ordinance to continue until the assessment is paid, whereas the latter is not; that the lien securing the obligation of the bonds may be foreclosed by a sale of the property as was had in the case at bar, but that the other lien may be foreclosed by an action therefor; that because the lien securing the bonds did not continue until the obligation was paid, it expired by virtue of section 2911 of the Civil Code as to any installments that had become payable more than four years prior to the sale (Code Civ. Proc., § 337); and that as the eleventh installment became due more than four years before the sale, the sale was void inasmuch as the purchase price included that installment. The obligation created by the bonds is the same as the assessment, the latter being the basis for the former. But whatever may be the rule in that respect plaintiff concedes that the obligation and the assessment lien are alive. Its action is one to quiet title and it is not entitled to an unconditional decree in its favor. The rule in an analogous situation is applicable. Although the obligation is barred by the statute of limitation, a mortgagor cannot have his title unconditionally quieted against the lien of the mortgagee. (17 Cal.Jur. 1005.) It is conceded by plaintiff that the lien of the assessment is continuing, and that therefore, if the bondholder brought an action of foreclosure, the statute of limitation would not be a bar.

Defendants assert that the judgment is correct because plaintiff did not tender or offer to pay the amount admittedly due under the bonds and that inasmuch as he is asking for equitable relief, he must do equity. It appears that no offer was made by plaintiff to pay the amount due on all or any

one of the parcels of the property. Plaintiff's complaint is in the conventional form of quiet title actions which in substance alleges that it is the owner of the property and that defendants claim an interest therein but their claim is without right. The prayer was for such other and further relief as shall seem meet and just in equity.

Defendants rely upon *Stege* v. *City of Richmond, supra;* and *Bradley Co.* v. *Ridgeway*, 14 Cal.App.2d 326 [58 P.2d 194]. In the Stege case the action was by an owner to quiet title against an invalid sale for delinquent special assessments. Judgment for defendants was affirmed on appeal even though the proceedings were invalid. The court stated at page 318:

"But the fact that the sale of appellants' property was invalid would not *necessarily* entitle the appellants to a decree quieting their title under the circumstances here shown. . . . The plaintiffs in this equitable action seek to relieve the lands from the burden of the assessment for such benefits without paying or offering to pay their just portion of the cost of the improvements. . . . The later case of *Hayne* v. *San Francisco,* 174 Cal. 185 [162 P. 625], was an action to quiet title. The defendant asserted a lien on the land by virtue of certain special assessments levied to pay the costs of the construction of a tunnel. The plaintiffs did not pay or offer to pay the assessments. The court said: 'As we find the assessment to be valid, the property of the plaintiffs is justly liable for its due proportion thereof. In such cases the plaintiff is not entitled to any relief in a court of equity unless he shall pay, or offer to pay, the amount actually due upon the assessment against his property. As was said in *Ellis* v. *Witmer,* 134 Cal. 253 [66 P. 303], "this being the case they cannot successfully invoke the assistance of a court of equity against the irregularities in the sale complained of, *unless on the condition of* paying what is due from them. Here *no such condition has been imposed by the court,* nor is there an offer in the complaint to pay what is due. The plaintiffs were therefore not entitled to relief." ' " (Emphasis added.)

The intimation is clear from the foregoing that it is wholly proper that a conditional judgment may be entered which preserves the lien of defendants. Although plaintiff did not plead a tender or make one, as we have seen, if the ordinance is complied with plaintiff is confronted with a difficult situation with reference to the exercise of its right to redeem the

various parcels severally. It is entitled to a determination of its rights under the circumstances. The certificate issued is void, and it should be so determined. Defendants have their lien on the property and it should be protected, but plaintiff should have its title quieted as to any or all of the parcels upon condition that it pay within the time allowed for redemption, the amount due against such parcel together with penalties and the costs of the sale. The court should order correct certificates of sale issued and compute the period of redemption from the date thereof. That equity requires such a result is further apparent when we consider that the judgment declares that the Department of Public Works is "authorized to make, issue and deliver to . . . Emily Relfe a deed to the real property." By reason of the invalidity of the certificate of sale she is not entitled to such deed. If that provision were permitted to remain in the judgment it would be tantamount to quieting title in Emily Relfe against plaintiff and deprive it of its right of redemption.

Defendants assert that plaintiff was guilty of laches. Suffice it to say that the sale was held on April 28, 1937, and the certificate bears that date. Plaintiff commenced its action on April 20, 1938, prior to the expiration of the period of redemption if the certificate had been valid.

The judgment is reversed and the trial court is directed to enter a decree in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Curtis, J., Schauer, J. pro tem., concurred.

TRAYNOR, J.—I dissent. It was admitted by the parties, and the majority opinion concedes, that the proceedings leading to the sale were valid in all respects. It is also conceded that the sale of the property was valid. In this regard the trial court found, and the testimony was uncontradicted, that the seventy-eight lots were sold separately. The only irregularity in the proceedings was the issuance of a single certificate of sale instead of separate certificates for each parcel. Section 35 of the ordinance provides: "The . . . Board is hereby authorized to make any sale authorized by any agreement and bond and shall issue for each sale an original and duplicate certificate of sale, in appropriate form, referring to this

ordinance, describing the parcels sold and containing the name of the purchaser; the originals shall be delivered to the purchaser and the duplicates shall be on file in the form of stubs in a certificate book.''

While the ordinance required separate certificates of sale, it does not follow that the certificate issued was invalid. In *Los Angeles Olive Growers' Assn.* v. *Pozzi*, 167 Cal. 454 [140 P. 581], this court stated: ''. . . the rule of strict adherence to statutory requirements in enforcing the payment of taxes and street assessments may sometimes be relaxed where it clearly appears from all the acts done under the proceedings that no substantial right of the owner of the property charged with the payment of such taxes or assessments has been affected. . . .'' In *Stege* v. *City of Richmond*, 194 Cal. 305 [228 P. 461], the court characterized as ''irregular'' group sales of lots sold for delinquent special assessments under a statute requiring that the lots be sold separately. In the present case the regularity of the sales is unchallenged, and the complaint is directed solely at the form of the certificate of sale. That irregularity must be judged in the light of the statement in the Pozzi case, *supra,* and particularly the express mandate of the ordinance that the provisions thereof ''shall be liberally construed to promote the objects thereof, and no error, omission, or irregularity in connection with the proceedings thereunder not affecting a substantial right of a party in interest shall invalidate any such proceedings.''

The certificate refers to the ordinance and contains the name of the purchaser. It sets forth a description of each lot sold, and opposite each description appears the itemized unpaid portion of the bond executed thereon, the interest accrued on such bond, the advertising costs for the sale of such lot, and the total amount due on each lot. While it does not state that these total amounts due represented the sum for which each parcel was sold, the aggregate of those totals equals the sum set forth as having been bid for the seventy-eight lots. Moreover, the sale authorized by each bond was a sale for the amount due on that bond plus the expenses of sale. These facts support the contention that the single certificate of sale covering all the lots was the substantial equivalent of separate certificates of sale for each lot. Plaintiff contends, however, that the issuance of a single certificate imposed upon it an unwarranted burden to redeem all the parcels sold, and that

it was therefore deprived of the right under the ordinance to redeem separately any of the parcels. It claims that the certificate of sale and the sales were therefore void.

The right of redemption is a substantial right of the owner (*County of San Diego* v. *Childs*, 217 Cal. 109 [17 P.2d 734]; *Los Angeles Olive Growers' Assn.* v. *Pozzi, supra; Teralta Land etc. Co.* v. *Shaffer*, 116 Cal. 518 [48 P. 613, 58 Am.St. Rep. 194]), and the ordinance in question undoubtedly confers upon the owner the right to redeem any or all of the parcels. There is no impairment of that right by the issuance of a single certificate of sale. In fact plaintiff redeemed three of the seventy-eight parcels before the commencement of this action. Section 37 provides: "At any time before the expiration of one year from the date of the certificate of sale, any property sold under the provisions of the preceding sections may be redeemed by any person having an interest in the property sold by the payment to the Board of the amount for which the property was sold, with an additional penalty of 15% of the amount for which the same was sold; all redemption money shall be paid by the Board to the holder of the proper original certificate of sale, upon delivering up the same and receipting for the amount received." Reference to the certificate of sale is made only in fixing the time for redemption and providing for the payment of the redemption money to the holder of the certificate. Redemption from execution (*Leet* v. *Armbruster*, 143 Cal. 663 [77 P. 653]; *Phillips* v. *Hagart*, 113 Cal. 552 [45 P. 843, 54 Am.St.Rep. 369]; *Hershey* v. *Dennis*, 53 Cal. 77; see Code Civ. Proc., § 704) and tax sales is ordinarily provided for in this manner (*Los Angeles Olive Growers' Assn.* v. *Pozzi, supra; Cooper* v. *Shepardson*, 51 Cal. 298; *List* v. *Sandell*, 42 Cal.App.2d 505 [109 P.2d 376]; *Laist* v. *Nichols*, 139 Cal.App. 202 [33 P.2d 866]; see *Leet* v. *Armbruster, supra;* 24 Cal.Jur. 342). It is also the general rule that a proper tender is equivalent to payment and effects a redemption of the land sold. (*Leet* v. *Armbruster, supra; O'Grady* v. *Barnhisel*, 23 Cal. 287; see 24 Cal. Jur. 339, 534; Civ. Code, § 1504.) Accordingly, had plaintiff wished to redeem, he could have done so by making a payment or by a tender in good faith. Had he done so, whatever interest the certificate holder had in the property would pass to the plaintiff. (*San Francisco etc. L. Co.* v. *Banbury*, 106 Cal. 129 [39 P. 439]; *Cooper* v. *Shepardson, supra; Laist* v. *Nichols*,

*supra*.) If the certificate holder refused to deliver up the certificate, the plaintiff would have the same remedies as if separate certificates had been issued for each parcel and the holder refused to relinquish them. The trial court found, however, that "neither the whole nor any part or parcel of the property described in the complaint was redeemed by plaintiff" and that plaintiff did not "offer to redeem any part or parcel of the property . . . at any time from the date of sale to the date of the complaint."

The only difficulty presented by the issuance of a single certificate is that the purchaser's right to receive the money paid on redemption is conditional upon delivering up the certificate of sale. (§ 37.) If, however, the purchaser were unwilling to relinquish the certificate of sale because it represented his rights in the parcels not redeemed, he would be entitled to have the first certificate cancelled and proper certificates issued to him under the same rule that entitles a purchaser at a tax sale to have a corrected deed where all the proceedings leading to and including the sale are valid. (See *Webster* v. *Somer,* 159 Cal. 459 [114 P. 575]; *Fox* v. *Townsend,* 152 Cal. 51 [91 P. 1004, 1007]; *Grimm* v. *O'Connell,* 54 Cal. 522, 523; *Roth* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1]; *Smart* v. *Peek,* 213 Cal. 452 [2 P.2d 380].)

It should also be noted that the bonds provided that the sales authorized thereunder "shall be made in the manner and form provided by law for the sale of real property on execution," and that defects in the form and content of a certificate of sale do not affect the validity of an execution sale or the proceedings thereafter taken. (*Anthony* v. *Janssen,* 183 Cal. 329 [191 P. 538].) It is contended, however, that the contrary rule applicable to defects in the certificate of a tax sale (*Hinds* v. *Clark,* 173 Cal. 49 [159 P. 153]; *Preston* v. *Hirsch,* 5 Cal.App. 485 [90 P. 965]; *cf. O'Grady* v. *Barnhisel, supra*) is controlling, since assessments for street improvements are *in invitum* and, in effect, tax proceedings. *Walton* v. *Moore,* 58 Ore. 237 [113 P. 58, 114 P. 105], is cited for the proposition that there should be stricter compliance with the statute in the case of a tax sale where the liability is involuntary, than in the case of a sale on execution which usually results from the voluntary contract or act of the debtor. In the present case, however, the bonds under which the sales were held represent the voluntary contracts of the debtor.

Furthermore, it has been held that defects in certificates of tax sales may be cured by retroactive legislation. (*Stanton* v. *Hotchkiss,* 157 Cal. 652 [108 P. 864] ; *Fox* v. *Townsend, supra;* *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234 [90 P. 936] ; *Baird* v. *Monroe,* 150 Cal. 560 [89 P. 352] ; *Carter* v. *Osborn,* 150 Cal. 620 [89 P. 608].) The curative provisions in the ordinance itself serve that purpose.

For the foregoing reasons I think the judgment should be affirmed.

Edmonds, J., concurred.