MENASHA WOODEN WARE COMPANY, Respondent, vs. THAYER and another, Appellants.

*September 21—October 8, 1912.*

*Tax titles: Constructive redemption: Misinformation given by county clerk: Who may redeem: Statutes: Construction.*

1. Sec. 1165, Stats. (1898), relating to redemption of land sold for taxes, should be liberally construed.
2. Although the owner of land knew that the taxes thereon for a previous year had not been paid, and had been informed by the county clerk of the amount required to redeem, yet when thereafter, within the time for redemption, his agent, to whom he had given sufficient money for the purpose, offered to redeem and was informed by the county clerk that there were no delinquent taxes, and by reason of such misinformation they were not paid, there was a constructive redemption by such owner.

[3. Whether a prospective purchaser of land under an oral agreement pursuant to which a deed had been deposited in escrow and he was to accept such deed and pay the consideration if on examination he found the title good, was within the term "other person" in sec. 1165, Stats. (1898), and had a sufficient interest in the land to entitle him to redeem from a tax sale, doubted.]

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. ' *Affirmed.*

Action to quiet title to the southeast quarter of the southwest quarter and the southwest quarter of the southwest quarter of section 36, township 40 north, range 2 west. From February 5, 1892, to January 16, 1900, the lands were owned in fee simple by A. B. McDonnell and Thomas Irvine, who were owners of large quantities of lands and were dealing as a partnership known as McDonnell & Irvine, of the business of which McDonnell had charge on behalf of the firm. By a deed dated December 5, 1899, but not delivered until the afternoon of January 16, 1900, they conveyed the premises to one Utz, who was acting as trustee for the plaintiff. November 10, 1902, Utz conveyed the same to plaintiff, who has since made no conveyance thereof. In 1898 the lands were duly taxed, and in May, 1899, were sold for the nonpayment of taxes, and on May 16, 1903, a tax deed in proper form was issued to the defendant *Thayer,* which was immediately put on record. In December, 1910, the defendant *Thayer* conveyed to the defendant *Tobey* a one-third interest in said tax title, and defendants claim under said tax deed and not otherwise. In December, 1899, McDonnell & Irvine made an oral agreement with plaintiff's trustee, Utz, to execute and deposit with the State Bank of Phillips, Wisconsin, their warranty deed of a large number of descriptions of lands, including those in question, with directions to deliver the same to Utz on payment of the consideration, and Utz agreed that he would accept such deed and pay the consideration if on examination he found the title good. The deed was drawn and executed by McDonnell & Irvine and deposited with the State

Bank of Phillips with directions in accordance with said oral agreement.  On December 5, 1899, McDonnell knew that the taxes of 1898 on the two forties here involved were unpaid, and that the lands were sold therefor at the tax sale of 1899, and on that day McDonnell authorized and directed one Stevens, who was instrumental in bringing about the oral agreement for the sale of the lands, to redeem any outstanding taxes on the lands included in said warranty deed, and furnished him with money to do so.  On December 6th McDonnell wrote to the county clerk of Price county a letter inquiring about delinquent taxes on these lands, and on the 7th he received from the county clerk a statement showing that the amount of $2.71 with interest and redemption fees were required to redeem each forty.  McDonnell did not communicate to Stevens any of the information thus received nor again see him before January 16, 1900, and McDonnell took no further personal action in respect to said taxes and never thereafter learned whether the same were paid.  On January 16, 1900, while McDonnell & Irvine's said deed and instructions were still with the State Bank of Phillips, one Miner, an agent of plaintiff and of Utz, fully authorized to act in the premises, went to Phillips, Wisconsin, and with said Stevens proceeded with and made an examination of the records in the register of deeds' office of Price county respecting the title to the lands described in said warranty deed, and then proceeded to the county clerk's office of said county and inquired of the county clerk whether there were any outstanding taxes against said lands.  Miner had a correct list thereof, and Stevens also had a long list of descriptions of lands, including the lands described in the warranty deed.  Miner read from his list to the county clerk the descriptions of lands and the county clerk turned to his records, examined and reported upon each description for each tax sale for several years preceding that date.  Said list of Miner was read through for each tax sale inquired about.  Neither Stevens

nor Miner personally examined the tax-sale records. The county clerk orally reported as the list was read that·there were no delinquent taxes against the lands inquired about, which included the lands involved in this action. Miner had sufficient funds of his principal with which to pay any taxes which might be found delinquent on said lands, and he and said Stevens intended in good faith to pay any such delinquent taxes found at that time, and would have paid the same if any had been reported by the county clerk. Upon completing the examination Miner paid the consideration for the deed, received delivery thereof, and immediately placed it upon record. Both Miner and Stevens in good faith believed that there were no delinquent taxes against any of said lands described in said deed. · Plaintiff has paid all taxes upon the lands herein involved, beginning with the tax of 1899 and continuing to this date, except that the defendants paid the tax of 1910. Neither plaintiff nor Utz nor Miner nor Stevens learned of the fact that the lands herein involved had been sold at the tax sale of 1899, nor that said tax deed thereon had been issued, until October, 1910.

The trial court held that on January 16, 1900, plaintiff had a sufficient interest in the land to entitle it to redeem, and that its offer to do so constituted a constructive redemption, and entered judgment setting aside the tax deed upon repayment of the amount for which the lands were sold for taxes, and the taxes paid by the defendants in 1910, with interest, from which judgment the defendants appealed.

For the appellants there was a brief by *Barry & Barry*, attorneys, and *A. W. Sanborn*, of counsel, and oral argument by *Mr. Sanborn* and *Mr. M. Barry*.

For the respondent there was a brief by *Holland & Lovett*, attorneys, and *Jerome R. North*, of counsel, and oral argument by *Mr. North*.

VINJE, J. From the statement of facts it appears that McDonnell, one of the owners of the lands in question, on

December 5, 1899, knew that taxes had not been paid thereon for the previous year; that he then gave one Stevens money to pay all delinquent taxes on any land in the list given him, including the lands in litigation; that he afterward wrote the county clerk and was informed of the amount required to redeem, but did not see Stevens again nor communicate to him the information received from the county clerk. Stevens went to the county clerk and informed him he desired to pay all delinquent taxes on the list of lands he had. The clerk, after examining the tax records, informed him there were no delinquent taxes. The situation shown is certainly more favorable to the owner than it would have been if McDonnell, upon receipt of the letter from the county clerk notifying him of the amount required to redeem, had personally gone to the clerk's office and offered to redeem, and had then been told by the clerk, after an inspection by the latter of the records, that there were no delinquent taxes. In such case it cannot be doubted that the owner would have a right to rely upon the last information given him by the clerk. Here the agent of the owner had no personal knowledge of the fact that the clerk had even claimed there were any taxes due, and he did not report to his principal till after the sale was made, and the latter never learned that the taxes were not paid. The facts show that the owner of the lands through his agent offered to redeem, was told by the county clerk that there were no delinquent taxes, and by reason of such misinformation they were not paid. Previous information to the effect that there are delinquent taxes does not preclude an owner from relying upon the county clerk's statement that there are none when he personally or by agent offers to pay or to redeem them. The statute of redemption, sec. 1165, Stats. (1898), which provides that "the owner or occupant of any land sold for taxes or other person may, at any time within three years from the date of the certificate of sale, redeem the same," etc., should be liberally construed. *Jones v. Collins,* 16 Wis. 594; *Karr v. Washburn,* 56 Wis. 303, 14 N. W. 189; *Lander*

*v. Bromley,* 79 Wis. 372, 378, 48 N. W. 594; *Begole v. Haz-zard,* 81 Wis. 274, 51 N. W. 325; *Barrett v. Holmes,* 102 U. S. 651, 657. It must therefore be held upon the undisputed facts that there was a constructive redemption by the owner.

This disposition of the case renders it unnecessary to determine. whether or not the prospective purchaser had a sufficient interest in the lands to entitle him to redeem. The trial court held he had, under the ruling in *Karr v. Washburn,* *supra,* and *Begole v. Hazzard, supra.* Such holding would seem to be an extension of the doctrine announced in those cases, and it is doubtful if any further extension thereof is justifiable.

*By the Court.*—Judgment affirmed.