[Civ. No. 2519. Third Appellate District.—October 16, 1922.]

D. N. JONES et al., Appellants, v. JOHN Y. STURZEN-BERG, Respondent.

[1] TAXATION—REDEMPTION—DUTY OF AUDITOR TO FURNISH ESTIMATE —EFFECT OF PAYMENT.—Under section 3817 of the Political Code, where an application is made to the county auditor for an estimate of the amount necessary to redeem property which has been sold for delinquent taxes, the applicant is not required to specify any particular delinquency or sale, but it is the duty of that officer to search the records and furnish the applicant with an estimate of the amount necessary to redeem from all prior delinquencies; and upon the payment by the applicant of the money specified in the certificates and the giving of the receipts by the officers, any deed or certificate of sale that may have been

1. Validity of tax sales where nonpayment is due to mistake or negligence of the tax officers, note, 20 L. R. A. 487.

made to the state becomes null and void, and all right, title, and interest acquired by the state under the tax sale ceases and determines, notwithstanding the auditor by some inadvertence may have failed to include in his estimate the amount due for the delinquent taxes of a prior year.

[2] ID.—CONCLUSIVE CHARACTER OF DEED—CONSTRUCTION OF CODE.—The provisions of section 3787 of the Political Code relating to the conclusive character of tax deeds do not apply where there has been a redemption under section 3817 of that code.

[3] ID.—QUIETING TITLE—EQUITY—REIMBURSEMENT OF PURCHASER.—Where the owner of real property comes into equity asking equitable relief to remove or cancel a tax deed or sale as a cloud upon his title, or to obtain a judgment which, in effect, will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser the taxes, penalties, interest, and costs justly chargeable upon the land and which the purchaser had paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin for Appellant.

W. E. Davies and Russell W. Cantrell for Respondent.

FINCH, P. J.—The land in controversy was assessed in 1913 to A. M. and E. L. Miller and, the taxes thereon becoming delinquent, the land was duly sold to the state in 1914 for the sum of $50.21. In 1914 the land was assessed to E. L. Walker and Wm. T. Parker and, on their failure to pay the taxes for that year, the land was again sold to the state in 1915, contrary to the express provisions of section 3814 of the Political Code. All subsequent taxes were allowed to become delinquent up to the year 1918, when the then owner applied to the county auditor for an estimate of the sum necessary to redeem. The auditor made the re-

---

3. Reimbursement of taxes paid by purchaser, as a condition of equitable relief against invalid tax title, notes, 16 Ann. Cas. 803; L. R. A. 1915C, 492.

quired estimate based on the purported sale to the state in 1915, inadvertently overlooking the sale to the state in 1914, and the owner paid the amount so estimated. The pleadings admit that the land is of the value of $5,000. The defendant Sturzenberg alleges in his cross-complaint that the land is worth $10,000 and there is ample evidence to support the allegation. It is further admitted by the pleadings that the consideration for the deed from Williams to Eich, hereinafter referred to, was less than $500 and that for the conveyance from Eich to plaintiffs less than $1,000. The other facts necessary to an understanding of the controversy are stated in the opinion of the trial court, which, in so far as applicable to the issues presented by the appeal, is adopted as the opinion of this court and is as follows:

"In this suit to quiet title, the issue as to present ownership is only between D. N. and Elba L. Jones, plaintiffs and cross-defendants, upon the one side, and John Y. Sturzenberg, defendant and cross-complainant, upon the other. The former, hereinafter for convenience, will be referred to as the plaintiffs, and the latter as the defendant. All other parties, plaintiffs, defendants, cross-complainants or cross-defendants, will be referred to by name.

"The opposing claims arise from the following facts alleged in the pleadings and shown by the record evidence: The title claimed by the respective parties traces to a common source, viz.: To the parents of Frank McCarn.

"In the years 1913, 1914, 1915, 1916 and 1917, the state and county taxes on said property were unpaid and delinquent. By operation of law, the land was sold to the state for the first delinquency, but regularly assessed each year thereafter. On the 29th of July, 1918, Frank McCarn, before the property had been sold by the state, and as the person whose estate might be sold, and being the party in interest then having the right to redeem by paying to the county treasurer of Yuba County, in which county the real estate is situated, the amount of taxes, penalties, and costs due thereon at the time of the sale, with interest, together with the sums due upon subsequent assessments, and desiring to redeem said land, made application to F. H. Greely, county auditor, for an estimate of the amount to be paid in order to obtain such redemption, thus obeying the direction

as to the proper procedure in such matters under section 3817, Political Code.

"Said auditor made out and delivered to McCarn, as directed by said section, the estimate and certificates in triplicate, purporting to specify the several and total amounts payable. The amount of money so specified was $264.50, which was paid by McCarn to Harvey D. Eich, county treasurer, who thereupon issued his receipts to McCarn, the redemptioner, who in turn delivered them as directed by statute to the auditor and state controller, obtaining from the auditor the proper receipt.

"By some inadvertence the auditor failed to include in said estimate the amount due for the delinquent taxes of 1913. McCarn believed the said $264.50, when paid, was in full payment of the sum required to redeem from all delinquencies. On October 19, 1918, McCarn conveyed said land to defendant by deed recorded November 22, 1918. This deed is the basis of defendant's claim of title.

"On July 8, 1919, Harvey D. Eich, as tax collector of Yuba County, purporting to act as directed by section 3771, Political Code, sold or attempted to sell said land for the state to one P. J. Williams, who was the highest bidder, for $167.03, the amount of taxes, costs, and penalties levied and assessed against said property for delinquent taxes of 1913; and executed a deed to said Williams on July 9, 1919, which on the same day was duly recorded. Thereafter, on February 16, 1920, said Williams deeded said property to said Harvey D. Eich, as an individual, which was recorded on February 28, 1920.

"Later, on April 14, 1920, said Eich executed a deed of said property to plaintiffs, which deed is duly recorded and is the basis of plaintiffs' claim to title. . . .

"The case for plaintiffs depends upon the fact that the taxes of 1913 became delinquent and were actually unpaid at the time of the tax sale in 1919, coupled with the claim that all precedent formalities as to such a tax had been observed.

"According to the masterly and logical argument of plaintiffs' counsel, the foregoing matters last mentioned, throwing their light upon the recitals in the tax deed, establish the conclusive character of said tax deed from which plaintiffs'

title is derived. That argument would control the court's view, were it not for the fact that it seems to rest upon the erroneous hypothesis that at the time of the tax sale, there had been no prior redemption under section 3817 of the Political Code. Plaintiffs' counsel evidently recognized that weakness and flaw in his position, when, in his closing brief, he said: 'While it is not necessary, we desire to take a fling at section 3817 of the Political Code. Under that section counsel make the remarkable claim that a land owner may go to the county auditor and say to him in effect: "I and ten or twelve of my predecessors in interest during the past fifteen years have owned lot five (5) in block six (6) of Range Letter E' in the City of Marysville. I want you to find out if that lot has been sold for delinquent taxes during that period and give me an estimate of the amount necessary to redeem." We say this is absurd. It is the duty of the land owner, and in this case Mr. McCarn held a mortgage upon this property in 1913 when the assessment was levied, to watch his property and pay his taxes, but if he doesn't pay them, to go to the auditor and specify the year of the sale and ask for an estimate, and not try to make the county auditor a searcher of records, and that is what the section means. "The county auditor shall, on application of the person desiring to redeem, make an estimate on the amount to be paid," etc. The application to redeem from what? Undoubtedly to redeem from a certain definite sale.'

[1] "The above reasoning ignores the first sentence of section 3817, which, in part, is as follows: 'In all cases where real estate has been sold, or may hereafter be sold, for delinquent taxes to the state and the state has not disposed of the same, the person whose estate has been or may hereafter be sold, his heirs, executors, administrators or other successors in interest, shall, at any time after the same has been sold to the state and before the state shall have disposed of the same, have the right to redeem such real estate by paying to the county treasurer of the county wherein the real estate may be situated the amount of taxes, penalties and costs due thereon at the time of said sale, with interest on the aggregate amount of said taxes at the rate of seven per cent per annum; and also all taxes that were a lien upon said real estate at the time said taxes became delinquent;

and also all unpaid taxes of every description assessed
against the property for each year since the sale'; . . . etc.

"The rest of the section need not be quoted. There was
only one sale to the state. And a fair interpretation of the
section fairly discloses that when any taxes have become de-
linquent upon property, and by operation of law the prop-
erty is deemed sold to the state, a taxpayer may apply to the
auditor for the certificates and estimates of the total amount
necessary fully to redeem the property from all outstanding de-
linquencies. The certificates in evidence, cross-complainant's
exhibits 1, 2, and 3, recite as follows: 'I, F. H. Greely,
county auditor in and for said county and state aforesaid,
do hereby certify that the foregoing statement contains a
full and correct estimate of the amount necessary to redeem
the within described real estate, made in accordance with
the provisions of section 3817, Political Code, as amended
March 20, 1905.'

"Upon payment of the money specified in the certificates
and the giving of the receipts by the officers to the taxpayer,
any deed or certificate of sale that may have been made
to the state shall become null and void, and all right, title
and interest acquired by the state under the tax sale shall
cease and determine.

"If this section is to be given any effect, it means that
the redemption upon such certificates and estimate in any
year necessarily includes all prior delinquencies. It must be
given such effect if it be the auditor's duty to make the
estimate and to give the certificates. That duty clearly
is imposed upon the auditor. (*San Diego Investment Co.* v.
*Shaffer*, 137 Cal. 323 [70 Pac. 179]; *Boyer* v. *Gelhaus*, 19
Cal. App. 320 [125 Pac. 916].)

"The auditor must keep informed concerning the status
of taxes and delinquencies upon every parcel of land on
the assessment-book. Section 3678, Political Code, says in
part: 'The recorder must, at the time he furnishes the ab-
stract of mortgages to the assessor, furnish said officer with
a complete and true statement of all property which has
been redeemed under or by virtue of any sale made to the
state for delinquent taxes, together with a complete and true
statement of all property sold to the state and remaining
unredeemed.'

"In Yuba County the offices of auditor and recorder are both held by the same person. Section 3680, Political Code, provides as follows: 'Whenever property has been sold for taxes and remains unredeemed, upon each subsequent assessment the assessor shall enter upon the assessment-book, immediately after the description of the property, the fact that said property has been sold for taxes and the date of the sale. Upon all bills or estimates of or for taxes accruing on said property subsequent to the date of said sale and prior to the redemption of said property or the execution to the state of a deed therefor, shall be distinctly and legibly written, printed or stamped the words ''Sold for taxes,'' and also the date of such sale.'

"Sections 3727 to 3739, Political Code, prescribe minutely the auditor's duties in relation to revenue.

"Under section 3801, Political Code, after land has been sold for delinquent taxes, the tax collector must furnish to the auditor a complete printed list of all such lands sold, and 'thereupon the auditor shall enter upon the assessment-book of the current year, immediately after the description of the property, the fact that said property has been sold for taxes and the date of such sale.'

"With the mandate of this section obeyed, it is apparent that the auditor has at all times under his eye the information he is required to furnish a taxpayer who applies to him for the estimate and certificates for the redemption of property under section 3817, Political Code. To the extent that the auditor must examine such assessment-book and obtain from it the data upon which to base a correct estimate, the law makes him 'a searcher of records.'

"All the foregoing citations show that the auditor's records at all times contain or presumably contain all the information required which he should give to an applying redemptioner.

"In the recent case of *Skidmore and Kramer* v. *George C. West, as Treasurer, etc.,* vol. 59 Cal. Dec. 494 [186 Cal. 212, 199 Pac. 497], it is held that: 'It is the duty of the proper county officers under the provisions of the Political Code relating to the assessment and collection of taxes before and after delinquency, when required by the board of supervisors, to furnish all the data necessary to show the amount of unpaid taxes, penalties, etc., upon land deeded to the

state, and the amount of land so deeded, together with such other information ascertainable from their respective books and records as the supervisors deem necessary for their enlightenment in exercising their authority in the premises.' The matter just quoted is from the syllabus.

"If, at the command of the supervisors, every county officer may be compelled to furnish data and information, why should a section like 3817, Political Code, which declares it to be the duty of the auditor to give a taxpayer similar information, be held invalid?

"The case of *San Diego Investment Co.* v. *Shaffer, supra,* supports this view and does not compel the taxpayer to specify a particular delinquent tax sale. When Frank McCarn, in the case at bar, received from the auditor and treasurer the estimate, certificates, and receipts, and paid to the treasurer the amount found by the auditor to be the correct amount required for redemption, the property in equity became redeemed from all prior delinquent sales to the state, because in the transaction the auditor was the authorized agent of the state. It follows that while the deed of Eich to Williams is *prima facie* evidence under section 3786, Political Code, that '6. The property was not redeemed,' that *prima facie* evidence was completely overthrown by the evidence in the case showing compliance on the part of McCarn with the mandate of 3817, Political Code. McCarn had a right to rely on the estimate. He was ready, willing, and able to pay all delinquencies.

"Having been misled by the erroneous estimate given him by the authorized agent of the state, he is entitled in equity to receive the full benefit of his attempted redemption.

[2] "The argument as to the conclusive character of the tax deed herein under section 3787, Political Code, does not apply herein, nor to any case where there has been a redemption under section 3817, Political Code. Careful consideration in this regard has been given to the case relied upon by counsel, viz.: *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234 [90 Pac. 936], but the equitable principle underlying the suit at bar and more explicitly stated in cases hereinafter cited, was not involved in the Bank of Lemoore case. That case simply held that the failure upon the part of officers to comply with certain statutory formalities, such as stamping upon receipts, etc., the words 'Sold to the state,'

would not overthrow a tax deed, certain recitals in which are made conclusive evidence of performance of some formalities by section 3787, Political Code.

"The legislative intent in the enactment of section 3787 was that the deed should be conclusive with respect only to matters not covered by section 3786 of the Political Code, declaring its effect as *prima facie* evidence. (*McDonough* v. *Cooper,* 179 Cal. 384 [177 Pac. 153] ; *Escondido High School Dist.* v. *Escondido Seminary,* 130 Cal. 128 [62 Pac. 401] ; *Bruschi* v. *Cooper,* 30 Cal. App. 682, 692 [159 Pac. 428] ; *State of California, by John S. Chambers,* v. *Royal Com. M. Co.,* 31 Cal. App. Dec. 132, see, also, 187 Cal. 343 [202 Pac. 133].)

"The principle controlling the suit at bar has been well stated in the Am. & Eng. Ency. of Law, volume 27, page 755, as follows: 'If the owner of land, or a party having an interest therein, in good faith applies to the proper officer for the purpose of paying the taxes thereon, and payment is prevented by the mistake or fault of such officer, as for example, where a tax is omitted from the list made out by the officer, the attempt to pay is considered in most jurisdictions, as the legal equivalent of payment in so far as to discharge the lien and bar a sale for nonpayment.'

"The text is supported by numerous decisions.

"Again, in 37 Cyc., page 1160, the rule is thus stated: 'Where a property owner in good faith applies to the proper officer to pay his taxes, and is furnished with a statement, certificate, or information as to the amount of taxes due, on which he relies, but which is incomplete or erroneous by reason of the mistake or fraud of the officer, and he pays all that is demanded of him, this will be equivalent to full payment, so far as to invalidate any subsequent sale of the property for the omitted taxes.' This text also is supported by numerous decisions.

"Even in the absence of such a statute as 3817, Political Code, the equitable principle should furnish ample protection to the taxpayer who has been misled by the mistake of an officer charged with the duty of keeping the books and giving to the taxpayer information of their contents concerning his taxes.

"The courts' decisions in other states frequently rest upon statutory foundations similar to section 3817, Political Code.

In commenting upon such decisions, the supreme court of Wisconsin said: 'These decisions are founded on the ground that the treasurer is the legal custodian of the books, and possesses full and authentic information, and it is his official duty to furnish it; that the land owner cannot get the necessary information in any other way, and is not bound to search the books for himself, and that the land owners almost always do, and rightfully may, depend on information thus received; and that the party cannot be involved in loss of his land by the mistake of the officer.' (*Gould* v. *Sullivan,* 84 Wis. 659, 666 [36 Am. St. Rep. 955, 20 L. R. A. 487, 492, 54 N. W. 1013].)

"Such reasons strongly apply here. The defendant and his immediate predecessors in interest paid all taxes on the land involved for the years 1914, 1915, 1916, 1917, and 1918; the defendant Sturzenberg, after the time of purchase from Frank McCarn, and being a nonresident of this state, and never having received any notice of any proposed sale by the state, rested securely in the belief that all taxes were paid. This belief can be traced to its foundation in the erroneous estimate and certificate furnished by the auditor to Frank McCarn. The sale of the land for nonpayment of taxes in arrears when such estimate and certificates were furnished and not included by mistake of the auditor, could and can not divest the title of the defendant.

"Justice Shaw, in the case of *Beck* v. *Wilson et al.,* 49 Cal. App. 281 [193 Pac. 158], decided September 14, 1920, said: 'In order to divest an owner of his property by a sale thereof for taxes the law requires a strict compliance with every statutory provision enacted for his benefit.'

"Section 3817, Political Code, is such a provision and was not complied with by the officer charged with the duty of compliance. Hence, defendant's title is good, while plaintiff has no title.

[3] "This conclusion, however, is subject to the statement and rule which are emphasized and followed in the case of *Beck* v. *Wilson, supra:* 'Defendants, however, did not restrict themselves merely to a defense of their title, but, as they were entitled to do, by answer asserted title in themselves, and prayed for affirmative relief, thus bringing themselves within the rule announced in *Holland* v. *Hotchkiss,* 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258], which

is that, ''Where the owner comes into equity asking equitable relief to remove or cancel a tax deed or sale as a cloud upon his title, or to obtain a judgment which, in effect, will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser, . . . the taxes, penalties, interest, and costs justly chargeable upon the land and which the purchaser had paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession.'' '

''In the instant suit, plaintiffs have been in actual possession since April 14, 1920. The reasonable rental value is shown to be one dollar per acre per annum. The plaintiffs should be charged with the rental during occupancy, and credited with the amount paid by Williams at the tax purchase, namely, $167.03, with interest thereon at seven per cent per annum to date of decree herein. Defendant is entitled to a decree as prayed for, declaring the tax sale void, and canceling the tax deed to Williams and the subsequent deeds of Williams to Eich, and of Eich to plaintiffs, and adjudging defendant the owner of the land upon his making the repayment as hereinbefore indicated, and quieting his title thereto.''

In addition to the authorities cited in support of the proposition that the owner seeking to redeem was justified in relying on the auditor's estimate, the following may be noted: *O'Connor* v. *Gottschalk,* 148 Mich. 450 [111 N. W. 1048]; *Menasha Woodenware Co.* v. *Thayer,* 150 Wis. 611 [137 N. W. 750]; *Beck* v. *Meroney,* 135 N. C. 532 [47 S. E. 613]; *Ford Lumber Co.* v. *Bartlett,* 32 Idaho, 638 [186 Pac. 709].

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.