[Civ. No. 16107. Second Dist., Div. Two. Feb. 20, 1948.]

LYNN O. HOSSOM et al., Respondents, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney, and Joseph B. Lamb, Deputy City Attorney, for Appellants.

Lynn O. Hossom, in pro. per., and George W. Trammell for Respondents.

MOORE, P. J.—From a judgment quieting title against a tax deed issued by the city tax collector to the city of Long Beach defendants appeal.

The land involved in the action is Lots 7 and 8 of the Alfalfa Land and Water Company's tract comprising 10 acres, more or less, in the city of Long Beach. On account of the nonpayment of the assessment for 1924 the property was sold for such delinquent taxes September 2, 1925. A second sale was attempted on September 2, 1933, based upon the delinquent list of 1932. On July 2, 1938, a tax deed was issued by the city tax collector to the city of Long Beach pursuant to the sale of 1932. After efforts had been made in 1940 by respondents' predecessor in interest to redeem the land and later by respondents in 1943 and 1945 this action was filed on August 9, 1945.

On March 16, 1946, the city tax collector issued a deed of correction. Respondents contend that both the first deed and the correction deed were void. On the other hand appellants contend not only are such deeds valid but that if there were an infirmity in either of them it was cured by the State

Curative Act of 1945 and by the curative ordinance C-2443 adopted October 26, 1945, by appellant city. The briefs of the parties abound with arguments with respect to the validity of such deeds and the validity of the curative ordinances. Also, much is said upon the question as to whether the attempts of the city to dedicate the lands to a public use after acquiring the first deed fulfilled the requirements of the statutes and ordinances. In view of the conclusions derived an extended discussion of those questions appears unnecessary.

Conceding (1) that the first tax deed of July 2, 1938, to the city and the correction deed of March 16, 1946, were both invalid, and (2) that their infirmities were cured by the city's curative ordinances, it is nevertheless inescapable that there was an effectual redemption of the land within five years after the tax deed's execution.

In 1924, the land belonged to Caroline C. B. Evans. Upon her decease subsequent to the levy of that year, title to the 10 acres was vested in her distributees: Elliott, Evans and Wall. By reason of facts that too frequently befall the lot of mortals they were unable to or did not pay the tax for that year. After the sale in 1925 to the city the inability or inaction of such taxpayers continued until May 31, 1940. On that day one Frank Wall, agent of the delinquent taxpayers, called upon the city tax collector and stated that he wished to redeem the property. In response to such declaration the collector told the agent that it was not redeemable. He testified that he would not have accepted an "amount equal to all delinquent taxes, penalties, assessments and costs against that property"; that "there wasn't any legal way" he could do it.

Such reply of the collector and his testimony will be more readily understood by including in the narrative that prior to Wall's offer to redeem the land the city council had on March 26, 1940, adopted resolution C-7476. Such resolution declared (1) that "the public convenience and necessity requires the use . . . of . . . lots 7 and 8." It instructed the city manager to take possession of the acres in the name of the city and to use them for such general municipal purposes as may be required by the city, and "hereby declares the right of redemption from the aforesaid tax deed to be terminated upon this resolution becoming effective." Such resolution was declared by the collector to have been the paramount hindrance to his acceptance of the amount that would then have been the price of redemption.

Further to demonstrate their sincerity and the good faith of their offer the title owners on May 31, 1940, caused their attorneys to write a letter to the city council requesting that body to grant them a hearing on behalf of the owners in order that they might fully present reasons why a redemption should be allowed. They stated in their letter that their clients were then "in a position and proposed to pay in full the city taxes on this property to date." Pursuant to such request the council permitted Attorney Taubman, a member of the firm representing the owners, to appear on the same day and present reasons for the owners' request that they be permitted to redeem the lots. He urged that it was neither equitable nor good business for the city to deprive them of the right to redeem. The city attorney advised the council that its only action favorable to such request would be to rescind resolution C-7476. Mr. Taubman appeared again before the council on July 9, 1940, and repeated his arguments on behalf of the delinquent taxpayers and again urged the council to rescind the resolution and to allow the owners to redeem. He stated again that he was ready to pay all the taxes, penalties and costs necessary to redemption. That request was also denied.

These offers by the taxpayers and their attorney and the rejection thereof by the collector constitute a sufficient compliance with the requirements of a legal tender. Redemptions from tax deeds are favored in law. The title acquired by a municipality at a sale of land for delinquent taxes is not of the same nature as the title vested in a private purchaser, "since the object of the purchase is not the acquisition of the property, but rather the collection of the taxes." (*Anglo California National Bank of San Francisco* v. *Leland,* 9 Cal. 2d 347, 353 [70 P.2d 937].) ■ It is the settled policy of the law "to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the state to redeem his property, to make his burden as light as possible" and to return the tax deeded property to the rolls for the further governmental support. (*People* v. *Gustafson,* 53 Cal.App. 2d 230, 234 [127 P.2d 627].)

■ The redemptive effect of such efforts to pay the delinquent taxes, penalties and interest finds support in the principle that the law in force at the time of the sale regulates the right of redemption (*Risso* v. *Crooks,* 217 Cal. 219, 220 [17 P.2d 1001]; *San Diego County* v. *Childs,* 217 Cal.

109, 119 [17 P.2d 734]), and in the fact that the city ordinance (No. B-55, § 54) then in force provided that property sold for delinquent taxes might be redeemed at any time "before the city shall have disposed of the same."

Appellants contend that no legal tender was made to the collector by the agent Wall on May 1, 1940, by reason of the fact that he did not actually offer that official sufficient money to discharge the total taxes, penalties and interest already accrued. In this they ignore the testimony of the collector that he refused to tell the agent the amount required, that he would not accept payment and that he could not do so because the right to redeem had been terminated by resolution (C-7476) adopted since the execution of the first tax deed. But it is the rule pertaining to redemption from a tax sale that a formal tender of money to redeem from such sale is not essential to the accomplishment of a legal tender when the offeree official refuses to tell the amount of taxes and accrued penalties and costs or for any reason refuses to concede the redemptive right and accept the money. (61 C.J., p. 1277, § 1762.) Where a tender is necessary to the establishment of a right against a party it becomes unnecessary when it is reasonably certain that the payment will not be accepted. (24 Cal.Jur. 514.) Also, when a definite offer to pay the tax collector is met with an unqualified refusal to accept the money the lien for the amount offered is discharged (*ibid.*, p. 535) and title is *ipso facto* restored to the would be redemptioner (*ibid.*, p. 338). The same principle is incorporated in Civil Code, section 2905: "Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is security, and paying or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay." Section 1504 also provides that the offer of payment "has the same effect upon all its incidents as a performance thereof." Section 1512 of the same code declares that the debtor is entitled to all the benefits which he would have obtained by the payment of his debt if his payment thereof is "prevented by the creditor."

By section 2076, Code of Civil Procedure, the creditor is required to specify his objections to a tender and if he fails to do so he is "precluded from objecting afterwards." A tender is not necessary where the declarations of the offeree are such as to indicate that the actual offer of money will be rejected; the law does not require a man to do a vain and

fruitless thing; a strict and formal tender is not necessary where it appears that if it had been made it would have been refused. (*Hoppin* v. *Munsey*, 185 Cal. 678, 685 [198 P. 398].) Where the tender of payment of the balance due on a chattel mortgage has been unjustifiably refused, such refusal places the mortgagee in default, stops the accrual of interest, discharges the lien and revests title in the mortgagor with full right of possession. (*Walker* v. *Houston*, 215 Cal. 742, 745 [12 P.2d 952, 87 A.L.R. 937].) ▓ A tender need not be kept good when it appears that it will not be accepted. (*Bogue* v. *Roeth*, 98 Cal.App. 257, 262 [276 P. 1071].) ▓ An effort in good faith by a delinquent taxpayer to pay his taxes is equivalent to payment and discharges the lien. (*Schultz* v. *Kolb*, 189 Wash. 187 [64 P.2d 79, 82.)

In a recent Oklahoma decision a lot of the defendant had been sold at a county commissioner's sale to plaintiff for less than the taxes due. Defendant promptly offered to redeem by paying the price paid by plaintiff with interest and costs; the treasurer refused the offer on the advice of the attorney general. After the offer had been repeated a number of times during the succeeding three and a half months the plaintiff as grantee under the tax deed sued in ejectment. The trial court having rejected defendant's cross-petition for a decree quieting title, the Supreme Court reversed the judgment and held that where "a person having the right of redemption has in good faith attempted to redeem by timely offering to pay to the proper officer the amount necessary to redeem, and the rights of innocent third persons have not intervened, he may enforce such right by a cross-petition in an action filed by the holder of the tax deed to recover possession of the land. The failure of the officer to do his duty does not render ineffective such a valid attempt to redeem. . . . The good faith attempt to redeem did not become ineffective and void by lapse of the redemption period but the right was preserved." (*Koehn* v. *Fluman*, 191 Okla. 71 [126 P.2d 1002].) An analogous holding is found in a case where because the purchaser had repudiated his transaction on the ground of fraud the vendor was relieved of the necessity of tendering a deed as a condition precedent to his suit for the balance due on the contract. (*Ratterree Land Co., Inc.* v. *Security First National Bank*, 26 Cal.App.2d 652, 658 [80 P.2d 102].)

By virtue of such principles, doctrines and holdings, it is definitely established by the testimony of the tax collector that the offer by the delinquent taxpayers was a good faith attempt by the latter to pay in full the amount essential to a redemption. The court's decision contains an implied finding that a tender was made by such first offer by agent Wall. Such implication takes the form of a distinct declaration by the express finding that the total due on May 31, 1940, was $4,392.73 including interest, penalties and costs.

Respondents contend that the appearances and argument of Attorney Taubman before the city council constituted a second tender. Such contention is not an accurate appraisal of the attorney's efforts. Rather should such efforts be classified as further demonstrations of the good faith of agent Wall and his principals in offering to redeem from the collector on May 31, 1940, by offering to pay the amount due. It is a fact worthy of comment that while the city council had the sole power to direct the collector to accept payment from Wall, the failure of Attorney Taubman to display before the council the money required for the redemption did not even provoke an inquiry by any member of that body. It follows that a lawful tender was made on May 31, 1940, within less than five years after the first deed to the city, and that by its rejection the title to the 10 acres was revested in the record title holders unless the period of redemption had been terminated by a valid ordinance.

But further proof of the collector's rejection of the offer on May 31, 1940, is disclosed by his second and third refusals of the amount due. On May 19, 1943, the date of his purchase of the acres, Mr. Hossom visited the collector's office and inquired about the amount of delinquent taxes. The officer refused to give "the figure up-to-date" but did furnish from his tax-deeded-lands ledger the amount up to 1940. He stated, however, that he would not accept the tax money and give Hossom a certificate of redemption. Under the authorities cited the collector's declaration to Hossom on May 19, 1943, constituted a second rejection of a tender of the amount required for a redemption. Nevertheless respondents did not rest with that refusal but in July, 1945, after a two years' absence from the county, Mr. Hossom called upon the collector with $6,000 "in cash and currency," exhibited and offered it to the official who "refused to accept it" and again declined to divulge to Hossom the total amount due

and stated that ''he could not give that information.'' From such tender and refusal the court might justly have found that a redemption of the land had been thereby effected.

Despite effective tenders made in 1940, 1943 and 1945, as impliedly found by the court below, appellants contend that by virtue of certain city ordinances and resolutions respondents' redemptive right had been defeated and that therefore the land could not be and was not redeemed. Those councilmanic acts were all and severally apparently designed specifically to foreclose the title owners of Lots 7 and 8 of their right of redemption, as will appear from the following recitals. At all times after October, 1915, and prior to August 21, 1938, section 54 of ordinance B 55 of the city of Long Beach provided that a redemption of any property sold for taxes might be made at any time after date of sale ''to the city, and before the city shall have disposed of the same, by paying to the city treasurer . . . the amount of taxes, penalties and cost due thereon at the time of such sale, with interest on the aggregate amount of said taxes . . . also all unpaid taxes of every description assessed . . . since such sale, with interest . . .'' On August 21, 1938, section 54 was amended by ordinance C-1625, effective as of that date, whereby redemptive rights could be exercised ''before the city shall have entered into possession of said property for public use and purposes.'' By virtue of ordinance C-1625 appellants contend (1) that they had occupied the land for public use and purposes prior to any attempt to redeem; (2) that such ordinance governed the right of redemption. Neither contention is correct as is shown below.

March 26, 1940, the city council adopted resolution C-7476. By its preamble it declared that ''the public convenience and necessity requires the use of certain real property for general municipal purposes,'' and in section 1 it was resolved that such ''convenience and necessity requires the use'' of Lots 7 and 8 for general municipal purposes. By section 2 the city manager was instructed to take possession of the land and to use it for such general municipal purposes, and the right of redemption from the tax deed was declared to be terminated. By reason thereof appellants contend that respondents' right of redemption was finally frustrated.

By ordinance C-1810 adopted June 18, 1940, section 54 of ordinance B 55 was amended to provide that the right of re-

demption of all property heretofore tax deeded to the city should terminate one year from the date of such enactment.

By resolution C-7717, adopted September 24, 1940, it was resolved that Lots 7 and 8 "which have heretofore been made-a part of the park system of the city of Long Beach, be named, designated and known as Veterans' Memorial Park" and the city clerk was instructed to post it in three conspicuous places in the city, whereupon it was to take effect.

By ordinance C-1960, adopted September 2, 1941, the southerly 30 feet of Lot 7 were "dedicated to public use" and "shall be known as a portion of Twenty Ninth Street."

It might here be observed that at the times of the adoption of the ordinances C-1625, C-7476, C-7717, C-1960 and C-1810 the city had not received a valid deed to the property, a demonstration of which is not essential to an affirmance of the judgment. The contention that the right of redemption was defeated by such ordinances is contrary to sound public policy, and ignores respondents' established rights. Except ordinance C-1960 and acts pursuant thereto, the enactments of the council were not sufficient to constitute a disposition of the acres as contemplated by ordinance C-7476. The only possession of any part of the lands (as established by the findings) was the occupancy by the city of those portions of Lots 7 and 8 improved and used as a street. Inasmuch as the city did there at considerable expense install streets, curbs and gutters, by the doctrine of inverse condemnation that area was correctly adjudged to be properly dedicated to public use and under the city's control, subject to respondents' claim for damages as in condemnation proceedings.

Ordinance C-1810 was ineffectual to terminate the right of redemption for three reasons: (1) It was an *ex post facto* law. Consequently, procedural due process was violated. The original provision of section 54 of B 55 was in full force at the time of the sale in 1925 and governed the right and time of redemption. C-1810 took effect immediately but allowed one year to redeem, the effective date being June 18, 1941, more than a year after the tender by the original assessees. The law in force at the time of the tax sale governs the redemptionary period. (*Risso* v. *Crooks*, 217 Cal. 219, 220 [17 P.2d 1001].) (2) But if ordinance C-1810 signifies anything not expressly declared, it clearly implies the redeemability of the title to the 10 acres by the provision

therefor at any time after sale and "before a deed thereto shall have been made to the city in accordance with the provisions of its ordinances or other applicable laws." Such language contemplates a valid deed made pursuant to a prescribed form and legalized procedure which was not true as to the tax deed* here involved. (3) The city was powerless to dedicate the land to public use. If its deed had been in all respects valid it would have been without efficacy in vesting full title in the city for the reason that at the time of the attempted dedication to public use the state held the paramount title by virtue of its acquisition by tax deed in 1939. Pursuant to Political Code, section 3773, which on February 1, 1941, became sections 3651, 3652 and 3653, Revenue and Taxation Code, the state owned the paramount title and the State Controller was in constructive possession of the 10 acres.

 Alienation of the land by the city was impossible by reason of the state's paramount right to exclusive possession after 1935 under its tax deed executed in 1939. (Pol. Code, § 3773; now Rev. & Tax. Code, §§ 3651-3661.) Also, the city could not take the land for public use prior to its agreement with the board of supervisors of Los Angeles County for the

---

*Some Defects of Tax Deed.
1. The first sale was July 2, 1925. The sale which is recited in the tax deed as the basis thereof was made on September 2, 1933. From the first sale until the second ordinance B 55 provided as follows:
"Sec. 66. That, in case property assessed for taxes is purchased by the city pursuant to the provision of this ordinance, it shall be assessed each subsequent year for taxes until a deed is made to the city therefor in the same manner as if it had not been purchased.
"Sec. 67. That, in case an assessment is made under the provision of Section 66 of this ordinance and the land is not redeemed from the previous sale had under the provisions of this ordinance, no sale shall be had under the assessment authorized by Section 66."
There had been neither a redemption from the first sale nor payment of the taxes assessed in years 1924 to 1930. Therefore the second sale was void. (*Jones* v. *Sturzenberg*, 59 Cal.App. 350, 351 [210 P. 835].)
2. While the sale of 1925 should have constituted the basis of any tax deed, the instrument recites a sale September 2, 1933, which was only four years and 10 months prior to the date of the first deed.
On July 6, 1925, date of the first sale, ordinance B 55 required that property sold to the city for taxes would be assessed yearly until a deed was made to the city, and in the event the land was not redeemed from the first sale no sale would be made for any assessment levied subsequent to such first sale. Therefore, the sale of September 2, 1933, was void as no redemption had been made from the 1925 sale. (*Jones* v. *Sturzenberg, supra.*)
3. No notice was sent by registered mail to the last assessee of the land of the intended sale as provided by both the city ordinances and section 3771a of the Political Code. Failure to send such notice nul-

purchase of the land. (Rev. & Tax. Code, §§ 3775 and 3791, formerly Pol. Code, § 3897d; *La Mesa Lemon Grove & Spring Valley Irrigation District* v. *Hornbeck*, 216 Cal. 730 [17 P.2d 143]; *Monheit* v. *Cigna*, 28 Cal.2d 19 [168 P.2d 965, 167 A.L.R. 995].) At no time prior to redemption, May 31, 1940, did Long Beach have an ordinance in conflict with the last mentioned section of the Political Code, and not until February 28, 1941, when it enacted ordinance C-1887. By sections 6.20 et seq. thereof an abortive attempt was made to authorize the city manager to occupy and possess such tax deeded land. The ordinance was not only an ineffectual attempt to invest the city with power to operate an enterprise not strictly a municipal affair within the purview of article XI, section 6 of the Constitution, but it also concerned a state and county affair which is controlled by section 3897 of the Political Code. (*Brewer* v. *Feigenbaum*, 47 Cal.App.2d 171, 175 [117 P.2d 737]. See, also, *Smith* v. *Addiego*, 54 Cal.App. 2d 230 [129 P.2d 953], holding that the lien for street improvement bonds is extinguished by a tax deed to the state.) It follows that the city could not become vested with complete title until it had first agreed with the board of supervisors for

---

lified the tax deed. (*Jones* v. *Walker*, 47 Cal.App.2d 566, 570 [118 P. 2d 299].)

4. The recital that five years had elapsed since the sale in 1933 was false. The elapsed period was only four and 5/6 years. Since this was a misrecital of the facts it nullified the deed. (*Henderson* v. *De Turk*, 164 Cal. 296, 298 [128 P. 747]; *Carter* v. *Chevalier*, 100 Cal.App. 567, 570 [280 P. 706]; 24 Cal.Jur., p. 365.) If it referred to the sale in 1925, as appellants contend, 13 years had elapsed. (*Bernhard* v. *Wall*, 184 Cal. 612, 621 [194 P. 1040].)

5. The publication of the delinquent tax list in 1938 for the 1937 assessment set forth the addenda which should have contained the legal description of Lots 7 and 8 with the notice that it would be sold on July 2, 1938, unless sooner redeemed. But instead of showing such legal description as it appeared in the delinquent tax list of the 1924 and 1932 assessments, that is Lots 7 and 8, each assessed separately, such addenda attached to the 1938 notice of the delinquent tax list refers to three separate undivided one-third interests in Lots 7 and 8. This is not the same description as that found in the assessments of 1924 and 1932. The failure of the tax collector to describe the property as Lots 7 and 8, Alfalfa Land and Water Company's Tract, in his addenda to the delinquent tax list of 1937-38 as it was sold in 1925 rendered the 1938 notice void. (*Galbreath* v. *Dingley*, 43 Cal.App.2d 330, 333 [110 P.2d 697].)

6. The addenda of 1938 did not show after each of one-third interests the amount of "all taxes, penalties and costs due." Failure to comply with law in both respects nullified the first tax deed. (*Gottstein* v. *Kelly*, 206 Cal. 742, 747 [276 P. 347]; *Kipp* v. *Danielson*, 108 Cal.App. 624, 626 [292 P. 155].)

a purchase of the state's interest. (Pol. Code, § 3897, now Rev. & Tax. Code, § 3791.)

 The correction deed did not avail appellants. Its execution and recordation on the eve of the trial of this action lessened its efficacy. It was an attempt to exercise the procedural provisions of various ordinances including ordinance C-1887 which had repealed section 2 of ordinance B 55. By C-1887 the council adopted a curative ordinance patterned after the legislative enactment whereby (§ 8.030) misstatements or clerical errors in a tax deed may be corrected by the city tax collector on the order of the city council with the written consent of the city attorney directing such correction, "by the issuance of a new or amended tax deed, when it can be determined from the assessment and subsequent proceedings what was originally intended." Section 8.035 of the same ordinance provides that such amended deed "shall contain a statement giving the reason for the issuance of a new or amended deed." Despite such language the correction deed did not contain a statement of the reason for the deed. Neither was it made upon the order of the city council, entered upon its minutes, with the written consent of the city attorney. Failure to comply with such ordinances rendered the correction deed void by virtue of the doctrine that where a particular form of tax deed is prescribed by law the form becomes substance. (*Hinds* v. *Clark,* 173 Cal. 49, 52 [159 P. 153]; *Tilton* v. *Russek,* 171 Cal. 731, 739 [154 P. 860]; *Henderson* v. *De Turk,* 164 Cal. 296, 298 [128 P. 747]; 24 Cal. Jur. 364; *Carter* v. *Chevalier,* 100 Cal.App. 567, 570 [280 P. 706].

 Neither was the correction deed rendered effectual by the Tax Validation Act of 1945 (Stats. 1945, ch. 1134; 3 Deering's Gen. Laws (1945 Supp.) Act 8443a) or by city ordinance C-2443. These laws became operative respectively in September and October, 1945, which was subsequent to all the redemptive efforts, and both related to deeds executed prior to their effective dates. A statute which divests one of the title to real estate must be strictly construed, and every requisite having a semblance of benefit to the assessee should be strictly complied with. (*Carter* v. *Chevalier, supra.*)

Finally, a material basis for the correction deed as declared therein was that "no person has redeemed the said property." The correctness of the trial court's decision that it

had been redeemed has been demonstrated above. Even though the correction deed had been in all respects legal, its execution followed all the offers of payment whose refusals cleared the land of the tax lien and effected redemption.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied March 9, 1948, and the opinion was modified to read as above. Appellants' petition for a hearing by the Supreme Court was denied April 19, 1948. Traynor, J., voted for a hearing.