[Civ. No. 1104. Fourth Appellate District.—June 11, 1934.]

THEODORE F. LAIST, Appellant, v. W. H. NICHOLS et al., Respondents.

Virgil S. Kipp for Appellant.

Herbert C. Kelly for Respondents.

HAINES, J., *pro tem.*—This action was brought by the appellant Theodore F. Laist to quiet, against the respondents W. H. Nichols and Geneva Nichols, husband and wife, title to the property known as lots 2 and 15 of The Highlands in San Diego County, as delineated on a map filed with the recorder thereof. The lots are located within what were the boundaries of the Linda Vista Irrigation District, which was dissolved by court decree in 1914. Appellant's claim to the property is derived from a conveyance under date November 9, 1901, from Otto Laist, who is shown by the record to have then owned it. The conveyance was not recorded until April 30, 1929, but its effect is to constitute appellant the owner, unless his title has been divested by sale and conveyance of the two lots to respondents' predecessor in interest, one Gould, for nonpayment of the irrigation district assessment for 1911. The trial court found that appellant Laist was not the owner of the lots, but that respondents Nichols were and gave judgment quieting their

title against Laist, and from that judgment the present appeal is taken.

█ It was stipulated at the trial that the district was organized in 1901 and the transcript purports to so show. Respondents in their brief claim, and appellant denies, that the statement of this date is an inadvertence and intended to be 1891. We feel justified in taking judicial notice that the district was actually organized on August 24, 1891 (Code Civ. Proc., sec. 1875, subd. 3; *Wood* v. *Kennedy,* 117 Cal. App. 53, 60, 61 [3 Pac. (2d) 366]; *Broyles* v. *Mahon,* 72 Cal. App. 484 [237 Pac. 763]), and that it was organized under the provisions of the act of March 7, 1887 (Stats. 1887, p. 29), known as the Wright Act. █ That act having been superseded, however, in 1897 by the act of that year commonly known as the Bridgeford Act (Stats. 1897, p. 254), the proceedings for the assessment and sale of the property must, if valid, have been had under the latter act in pursuance of the provisions of section 109 thereof making it applicable to districts theretofore organized. There can be no question that this might properly have been done.

The amount of this 1911 assessment against lot 2 was $116.32 and that against lot 15 $113.49 and the lots were sold by the collector of the district to Gould on February 28, 1912, for $124.63 and $121.66, respectively, and two certificates of sale, one applicable to each lot, issued to him. These certificates described the district as organized under the 1887 act and existing under and by virtue of said act and the acts of the legislature of said state "amendatory thereof and supplemental thereto" and referred to the maker of the certificate, that is to the collector, as "having this day sold the land last hereinafter described under and as commanded by said acts". The district having meanwhile been dissolved the county treasurer, acting under the 1911 amendment to section 47½ of the Bridgeford Act (Stats. 1911, p. 516) in pursuance of the sale, issued a tax deed covering the two lots and containing the usual recitals, on May 21, 1923, to Gould, from whom whatever right to the property was so acquired by him passed by mesne conveyances to respondent W. H. Nichols. The deed to Nichols bore date December 27, 1926, and he paid therefor, through an escrow at the office of the Union Title Insurance Com-

pany of San Diego $694.24, an amount fixed by adding to the purchase price paid by Gould the statutory penalties and interest thereafter accrued.

Manifestly the result of the sales by the collector and the county treasurer's deed with the conveyances that followed it was to divest the Laist title and vest title to the property in respondent W. H. Nichols if the proceedings recited were regularly and properly taken. Appellant claims that they were not for the reasons, first, that the collector's sale was had under the provisions of the repealed 1887 (Wright) Act, which had no application to a district that, according to his claim, was organized under the 1897 (Bridgeford) Act, and in any event authorized no sales under it after its repeal and, second, that after February 28, 1912, when the lots were sold to Gould by the collector, but before May 21, 1923, when the county treasurer issued his deed, the lots had been redeemed.

In taking judicial notice that the district was organized under the Wright Act we have disposed of the contention that the recitals in the certificates of sale were wrong in so reciting. We think that the criticism of the further recitals in the certificates of sale is overtechnical. While it is true that the Wright Act was superseded by the Bridgeford Act, yet the saving provisions of section 109 of the latter act expressly provide for the continued life of districts organized under earlier statutes and their subjection to the provisions of the new act ''so far as applicable''. The provision in section 110 of the Bridgeford Act for the repeal of the Wright Act and the subsequent acts supplemental thereto and amendatory thereof only undertakes to repeal them ''so far as they may be inconsistent herewith''. We think that the Bridgeford Act may in respect of the application of its fiscal provisions to districts organized under the Wright Act be properly described as amendatory of and supplemental to that act and therefore that the recitals in the certificates need not be construed as meaning that the sales were had under repealed provisions.

The serious question in this case is whether the lots had not been redeemed in the same year that they were sold and long before the deed issued, in which case, of course, there would have been no authority for issuing the deed. After the respondents had put in their evidence, including

the county treasurer's deed, appellant in rebuttal offered two receipts shown by stipulation to have been signed by the collector of the district. Of these the first bore date March 14, 1912, and was in the words and figures following:

"LINDA VISTA IRRIGATION DISTRICT
ASSESSMENT RECEIPT, 1911.

"Linda Vista, County of San Diego, Cal., Mar. 14, 1912. Assessment Rate: $31.355 on each $100 valuation.

"Received of Otto Laist, Two Hundred Twenty-nine and 81 Dollars, in payment of the Assessment of said District levied in the year 1911 to pay the Judgments against said District upon the following described property:

| "Description. | Lot | Acres | Real Estate |
|---|---|---|---|
| "The Highlands | 2 | 16.86 | 371 |
| " " | 15 | 16.44 | 362 |

"Total value of all property after deductions ............................$733
"Assessment ...........................$229.81
"Five per cent. added on the last Monday in December, 1911...................———
"Total .................................

"LLOYD G. PETERS, Tax Collector."

The second receipt bore date July 7, 1912, and read as follows:

"LINDA VISTA IRRIGATION DISTRICT
REDEMPTION RECEIPT.

"Linda Vista, County of San Diego, Cal., July 7 1912.

"Received of T. F. Laist One Hundred Seventeen and 95 Dollars in redemption of the following described property, sold on the —— day of February, 1912, for taxes of 1911 levied to pay outstanding indebtedness of said district.

"DESCRIPTION OF THE PROPERTY

"Lots 2 and 15 of the Highlands Sale Certificate No. 929–930.

| "Amount sold for | $ · |
|---|---|
| Interest | $——— |
| Total | $117.95 |

"LLOYD G. PETERS, Collector."

We are required at this stage to notice a contention by respondents that the collector's receipts are no evidence of the payments therein recited, in support of which it is

claimed that the testimony of the person making, receiving or seeing any payment is the best evidence of such payment and that receipts are merely unsworn declarations or admissions against interest by the person executing the same; that while as such admissions they are always admissible as against the makers of the receipts, they are incompetent evidence as against other parties. It is claimed that this principle, of the general correctness of which as to private receipts there is no doubt, is applicable to tax receipts and to this effect respondents' counsel cite *Spotswood* v. *Spotswood*, 4 Cal. App. 711, 716 [89 Pac. 362]; *Powell* v. *Hendricks*, 3 Cal. 427, 430; *Christy* v. *Spring Valley Water Works*, 97 Cal. 21, 26 [31 Pac. 1110]; *Clark* v. *Blair*, 14 Fed. 812, 816; *Miller* v. *Murphy*, 186 Cal. 344, 349, 350 [199 Pac. 525]. None of these citations sustain any such proposition. Tax receipts, since they are issued in pursuance of official duty, stand on a wholly different footing. In *Spotswood* v. *Spotswood, supra*, without deciding whether the admission of tax receipts to prove a payment was proper or not, the court merely said "the admission of the tax receipts, if error, was without prejudice as defendant testified to the payment and plaintiff afterward admitted it. . . ." In *Powell* v. *Hendricks, supra*, the Supreme Court held that a certificate of the tax collector, apparently to the effect that certain taxes had at some time previously been paid, was improperly admitted. This must obviously have been so as the certificate would be mere hearsay and not a document officially issued as a part of the transaction itself. The court, however, went on to say: "If the payment of taxes was sought to be proved, in order to show that there was no abandonment of the premises, the evidence of the collector himself would be the best, and in his absence his receipt for the taxes, with proof of its execution, would be admissible." In *Christy* v. *Spring Valley Water Works, supra*, where the converse situation to that which arose in *Spotswood* v. *Spotswood, supra*, was presented, the Supreme Court said: "The error if any in excluding the tax receipts was cured by the testimony of Elliott who testified that the defendant had paid the taxes continuously . . ." The proposition laid down in *Clark* v. *Blair, supra*, is merely that tax receipts are not evidence of the legality of the proceedings under which the taxes so shown to be paid were

levied. The proposition involved in *Miller* v. *Murphy, supra,* was merely that the tax receipts there involved, evidencing payments on the property purporting to be described therein, were not shown to be applicable in their descriptions to the property involved in that action. It will be seen, therefore, that, though the testimony of the official receiving the payment or of someone else who saw it made would be proper and probably the best evidence that it occurred, yet it was directly holden in *Powell* v. *Hendricks, supra,* and intimated in *Christy* v. *Spring Valley Water Works, supra,* and in *Miller* v. *Murphy, supra,* that tax receipts properly describing the property taxed are competent evidence of the payment of the taxes. There is, moreover, as noticed by appellant, abundant other authority in this state to the same effect. (*Placer County* v. *Dickerson,* 45 Cal. 12; *In re Moore Estate,* 72 Cal. 335, 344 [13 Pac. 880]; *Doolittle* v. *McConnell,* 178 Cal. 697, 710 [174 Pac. 305]; *Lloyd* v. *Davis,* 123 Cal. 348 [55 Pac. 1003].)

The $229.81, payment of which was acknowledged by the receipt of March 14, 1912, was precisely the aggregate of the original assessments on the two lots but, although at its date the lots had already been sold, it included nothing for accrued penalties or costs of sale. To have paid the amount for which the collector was then authorized to allow a redemption of the lots would have required approximately $21.08 more. The $117.95, payment of which was acknowledged by the receipt of July 7, 1912, would, if added to the $229.81, have made an aggregate of $347.76, or something like $100 over what would have been required to redeem the two lots on this latter date. If taken by itself, the $117.95 would be something short of half of the amount necessary to then make the redemption. No record of either of these redemption receipts appears to have been made in the county recorder's office, though it appears that both certificates of sale were filed there on July 3, 1912, at the request of the collector for the district. The evidence discloses no further explanation of these transactions.

Numerous authorities are cited by appellant to the effect that where the land owner has paid the sum demanded by the official entrusted with informing the public of the amount necessary to redeem property from tax sales, the redemption is complete and effective and the remedy of the

holder of the tax sale certificate, if the amount exacted was insufficient, is against the official. There is no question that such is the law and it was so declared in this state in *Jones* v. *Sturzenberg*, 59 Cal. App. 350 [210 Pac. 835], to which we refer for a full discussion of the subject. It is claimed, however, that no evidence of any such application to the collector for information appears. On the other hand, appellant asserts that the existence of the two receipts from the collector is itself evidence that an application to redeem had been made to him and his statement with respect to the amount required sought and complied with, citing *inter alia, Corning Town Co.* v. *Davis*, 44 Iowa, 622, 627, where it is said:

"It is a fact which cannot be disputed, that all persons who pay taxes or redeem from tax sales resort to the proper county officers, and not to the county records for information as to the amount of their taxes, the existence of sales from which redemptions have not been made, and the like. The records, while they may be accessible and intelligible to the taxpayer, are not usually understood readily by persons doing business in county offices. The officers uniformly impart to the taxpayer all information in regard to the condition of his taxes found in these books. And it is also true that information received from these officers is always relied upon by the taxpayer. Indeed, it is imparted in the discharge of official duties, and the law will justify such reliance thereon."

Appellant cites also *People* v. *Faxon*, 111 Misc. 699 [182 N. Y. Supp. 242, 244], where the writer of the opinion says:

"The receipts offered in evidence show that the then owner paid taxes on this property for 1869 and 1870. In the absence of other proof, the receipts would in themselves raise a presumption of payment in full. The plaintiff contends, however, that by the introduction of the comptroller's book the presumption is overcome, and that the book shows that the payments shown by the receipts did not extinguish the amount of the tax levied against the premises. If it be true that the books of the comptroller show a greater amount of taxes than appear to have been paid, then I think, under the facts here shown, the presumption follows that the owner paid the amount demanded by the collector."

■ In the present case we incline to follow *People* v. *Faxon, supra,* and agree with appellant that the production from his possession of the redemption receipt was, if taken by itself, under the presumption (Code Civ. Proc., sec. 1963, subd. 20) that the regular course of business had been followed, a *prima facie* showing that application had been made to the collector to redeem the property and that he had furnished the figure on the basis of which the payment was made. It may be that this would not follow from the first receipt alone, which merely recites that it is "in payment of the assessment", saying nothing about any redemption, and, as to that the trial court might, if it so believed, have been sustained in finding that the collector received it merely as a payment on account, requiring a further payment of the penalties and costs before he should issue a redemption receipt. The second receipt, however, is specifically stated to be "in redemption" of the two lots here involved and must therefore be given some definitive effect. Respondents claim that the trial court may properly have inferred that the former payment had been returned, rather than that the collector retained it and that this latter receipt evidences an additional payment. Had it been returned the rule contended for by appellant would apply to the payment of $117.95 evidenced by the later receipt, that is, that this payment, were there no showing to the contrary, should be presumed to be in the amount that the collector required and should therefore be held in itself to have effected a complete redemption as of July 7, 1912; while, if the first payment was not returned, appellant would have no occasion to rely on that presumption since at least as early as July 7, 1912, the collector would have been paid more than enough to meet all demands on both lots and the redemption would by that time certainly have been complete.

■ In the case at bar the collector's receipts were offered, as we saw, after respondents had placed in evidence the county treasurer's deed to Gould and we have therefore to consider what effect to give to the circumstance that the treasurer executed the deed at a time long subsequent to the issuance of the receipt and in this connection to consider the effect of sections 47½ and 48 of the Bridgeford Act. Section 47½, after providing, as we saw, for the execution of deeds by the county treasurer

where an irrigation district has been dissolved, goes on to provide that "a deed so executed shall have the same force and effect as if executed by the collector of an irrigation district". Section 48 is as follows:

"A deed issued by the collector of an irrigation district as provided in section 47 hereof, when duly acknowledged or proved, is *prima facie* evidence that: (a) The property was assessed as required by law; (b) the property was equalized as required by law; (c) the assessments were levied in accordance with law; (d) the assessments were not paid; (e) at a proper time and place the property was sold as prescribed by law, and by the proper officer; (f) the property was not redeemed; (g) the person who executed the deed was the proper officer. Such deed duly acknowledged or proved is (except as against actual fraud) conclusive evidence of the regularity of all the proceedings from the assessment by the assessor, inclusive, up to the execution of the deed. The deed conveys to the grantee the absolute title to the lands described therein free of all encumbrances, except when the land is owned by the United States, or this state, in which case it is *prima facie* evidence of the right of possession."

The problem then is briefly this: The treasurer's deed raised the *prima facie* presumption that at the time it was issued the lots had not been redeemed from the sale and this presumption stood uncontradicted until the introduction of the collector's receipts. These amounted to a showing to the contrary. Had the trial court believed that there had been paid in such redemption the aggregate amount shown by the two receipts, that is $347.76, it must necessarily have held that the presumption of nonredemption raised by the production of the treasurer's deed was overcome and that the deed had been improperly issued. Had the court been justified in finding that the earlier payment of $229.81 had not been retained by the collector but returned and the later payment of $117.95 alone retained, then the *prima facie* presumption would still arise that the redemptioner had applied to the collector to find what it would cost to redeem and in paying the $117.95 had complied with the collector's demands. In that event, this presumption would be met by the other presumption arising under section 48 of the Bridgeford Act from the presence of

the deed that the property had not been redeemed and the principle relied on by respondent would apply, that this presumption of nonredemption would necessarily have not only to be contradicted, but overcome before the trial court could have found that a redemption had been made (*Miller & Lux* v. *Secara,* 193 Cal. 755, 770, 771 [227 Pac. 171]). But we do not think that this situation was before the court, nor do we think that, when presented with the collector's receipts for sums aggregating $347.76 the court was at liberty, in the absence of further explanation, to infer that the collector had retained less than that aggregate and we think that the situation demanded some further explanation before the evidence could justify the finding implicit in the decision that no redemption had been made.

We may add that the record shows that when respondent W. H. Nichols purchased the tax title he knew that appellant claimed to own the property. Nichols' rights are no greater than Gould's (*Shackelford* v. *McGlashan,* 27 N. M. 454 [202 Pac. 690, 692, 23 A. L. R. 75]; *Warden* v. *Glos,* 236 Ill. 511 [86 N. E. 116, 117]).

The judgment is reversed and the case remanded for a new trial.

Barnard, P. J., and Marks, J., concurred.