[Civ. No. 65840. Second Dist., Div. Two. Dec. 14, 1982.]

CALVIN C. PETERSON et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

---

[REDACTED]

---

COUNSEL

Timothy S. Harris for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Phillip C. Griffin and Jeffrey M. Veseley, Deputy Attorneys General, Levinson & Lieberman, David M. Marcus, John H. Larson, County Counsel, and Raymond G. Fortner, Jr., Deputy County Counsel, for Defendants and Respondents.

---

OPINION

**ROTH, P. J.**—Leland McCoy was the record owner of two parcels of real property in the County of Los Angeles which in July of 1976 were deeded to the State of California as a result of the owner's failure over a period of time to pay property taxes levied thereon. (See Rev. & Tax. Code, §§ 3351, 3361, 3511.)

On May 12, 1977, McCoy conveyed his interest in the realty to respondent A. E. Sandorf, Inc., by grant deed recorded January 20, 1978.

On February 1, 1978, the county purported to sell the parcels to appellants at public auction.

Prior thereto and on January 23, 1978, respondent First American Title Company of Los Angeles, on behalf of Sandorf, caused to be delivered to the county checks for the full amount of unpaid taxes, interest and penalties necessary to redeem the properties. (See Rev. & Tax. Code, § 4101 et seq.) For reasons not wholly apparent, however, the moneys submitted went so far unacknowledged as to permit the February 1 sale to appellants.

When the county subsequently concluded Sandorf had in truth redeemed the parcels prior to the auction, it declined to convey them to appellants. The latter,

in turn, then brought suit to quiet title and for specific performance. Satisfied the facts herein described required the result as a matter of law, the trial court granted respondents' motion for summary judgment and dismissed the cause.

■  The only question here is whether the determination was correct; more precisely, the sole issue is whether, under the circumstances present, tender by check of the total amount needed to redeem real property previously deeded to the state on account of tax delinquencies itself constitutes redemption, as contemplated by applicable statutes. It is clear to us that it does and we accordingly affirm.

As posited by appellants, no redemption occurred herein because "redemption requires more than the mere delivery of funds to a clerk in the office of the Los Angeles County Tax Collector. . . . '[R]edemption' requires the receipt of funds by the cashier of Los Angeles Tax Collector's office *and* the issuance of a Certificate of Redemption, duly issued [and] stamped by the cashier's office." That the contention is misconceived is evident, in our view, by reference to pertinent statutes and to case authority. So, respecting the first of these, Revenue and Taxation Code section 4102 speaks to "The amount necessary to redeem . . .," while section 4105.2 provides that "Upon redemption, the tax collector shall issue certificates of redemption . . . ." While appellants insist the latter section supports their hypothesis, the language of Revenue and Taxation Code section 4112 seems clearly to refute the claim, specifying as it does that "When a certificate of redemption is issued as a *result of the redemption* of tax-deeded property, the tax collector . . . shall execute and record . . . a release of equity or quitclaim of the property redeemed . . . ."

Similarly, in terms of reported decisions premised upon statutory provisions, it has been observed that: "Under the provisions of [Revenue and Taxation Code] section 4101, property sold to the state and property deeded to the state for delinquent taxes may be redeemed until the right of redemption is terminated. Accordingly, real property sold and deeded to the state for delinquent taxes may be redeemed by the former owner *by* the *payment* of all delinquencies and statutory penalties at any time prior to the disposition of the property by the state. (*Hohn* v. *Riverside County Flood Control etc. Dist.,* 228 Cal.App.2d 605, 613 . . . .)" (*McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 540 [109 Cal.Rptr. 149].) (Italics added.) and again that: "Redemption is normally effected *by payment* of delinquent taxes, penalties, costs and fees (§ 4102). Redemption through installment payments is authorized by the code (§ 4216 et seq.; §§ 4219-4221). Payment of delinquent taxes may be made in full or as stated in [Revenue and Taxation Code] section 4219 which reads as follows: 'Election to pay delinquent taxes in installments is made by payment, *in the same manner as a redemption,* of 20 percent, or more, of the redemption amount.'" (*Herrington* v. *Weigel* (1978) 82 Cal.App.3d

676, 686 [147 Cal.Rptr. 397], (Italics added); see also *Laist* v. *Nichols* (1934) 139 Cal.App. 202, 209-210 [33 P.2d 866].) Finally, it is established that:

"[W]hen a definite *offer to pay* the tax collector is met with an unqualified refusal to accept the money the lien for the amount offered is discharged . . . and title is *ipso facto* restored to the would be redemptioner . . . ." (*Hossom* v. *City of Long Beach* (1948) 83 Cal.App.2d 745, 750 [189 P.2d 787].) (Italics added.) Such being the case, a fortiori it is true a former owner is again the holder of title upon payment of arrearages where that payment is shown to have been accepted, even if it has not been formally acknowledged, the difference in any instance like that present here being one between the operative fact of payment and the means by which that fact is evidenced.

The order appealed from is affirmed.

Beach, J., and Gates, J., concurred.